| iPETERS, Judge.
The defendant, Allison Scott Thibodeaux, was convicted by a jury of possession of a controlled dangerous substance, Schedule II, hydrocodone, in violation of La.R.S. 40:967(C). He was subsequently found to be an habitual offender and sentenced to four years in the custody of the Department of Corrections, with credit for time served. The defendant appeals his conviction, assigning five errors on the part of the trial court.
DISCUSSION OF THE RECORD
On August 6, 1992, the Calcasieu Parish Sheriff’s Office received information that the defendant was smoking marijuana at a Lake Charles residence. On August 7, 1992, officers went to the defendant’s apartment and were invited in by the defendant. The defendant’s wife and stepson were also in the apartment at the time.
The defendant and his wife were advised of their Miranda rights, and the defendant chose to speak with the officers. After initially denying that he smoked ^marijuana, the defendant changed his statement and told the officers that he did smoke marijuana and that he had a personal stash at his apartment. He gave the officers consent to search his apartment. The defendant directed the officers to a dresser drawer where they found a “stash” of illegal drugs, which included a prescription bottle containing marijuana gleanings and one and one-half white tablets. The white tablets later tested positive for hydrocodone. The label on the prescription bottle indicated that the bottle contained Fiorinal, which was dispensed in the defendant’s wife’s name. The defendant advised the officers that the hydrocodone tablets were his property, that they were pain killers, and that he had traded a marijuana cigarette to obtain them. He further acknowledged that he did not have a prescription for the hydrocodone tablets.

ASSIGNMENT OF ERROR NO. 1:

In this assignment, the defendant contends that the trial court erred in refus- *479 mg to admit evidence of the defendant’s prescription medication for pain and his wife’s prescription medication. Specifically, the defendant sought to introduce a copy of his medical records to show that he had suffered an injury and had a prescription for his own pain medication, the inference of such evidence being that the hydrocodone was not the defendant’s since he did not need it. The defendant also sought to introduce a pharmacy’s computer printout to establish that the defendant’s wife had a prescription for hy-drocodone. The trial court refused to admit the medical records or the computer printout into evidence. We find no error in the trial court’s ruling relative to these evidentiary matters.
At the time of trial, La.Code Evid. art. 804(B)(5) provided in part:[1]
B. Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
| ⅞(5) Records of regularly conducted business activity. In a criminal case, a ... report, record, or data compilation ... made at or near the time by, or from information transmitted by, a person with knowledge, if made and kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make and to keep the ... report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, if the source of information, method, and circumstances of preparation indicate a clear and convincing degree of trustworthiness. This exception is inapplicable unless the recorded information was furnished to the business either by a person who was routinely acting for the business in reporting the information or in circumstances under which the statement would not be excluded by the hearsay rule.
The defendant failed to show the unavailability of the declarants concerning his medical records and the pharmacy printout. Thus, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 2:

In his second assignment of error, the defendant asserts that the state was improperly allowed to comment on his right to remain silent. Specifically, the defendant points to the following portion of the state’s rebuttal closing arguments:
The evidence was, he was standing right there when [his wife] got cuffs put on her hand. If he wanted to come to her defense, don’t you think that was the time to do it. [sic] He stood moot [sic]. He just stood there while she got arrested along with him. So, don’t let anybody come in with a snow job two years later and try to convince you that he’s taking the rap for somebody else.
Defense counsel objected to the remarks and moved for a mistrial.
In Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the issue was whether a prosecutor could seek to impeach the defendants’ exculpatory story, told for the first time at trial, by cross-examination as to the failure to tell the story after receiving Miranda warnings at the time of arrest. The Supreme Court held that the use for impeachment purposes of the defendants’ postarrest silence violated due process. The Supreme Court explained that silence in the wake of Miranda warnings may be merely an arrestee’s exercise of his Miranda rights. The Court concluded:
Thus, every postarrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. Moreover, while it is true pthat the Miranda warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person’s silence to be used to impeach an explanation subsequently offered at trial.
Id. at 617-18, 96 S.Ct. at 2244-45 (footnote omitted) (citation omitted).
However, in Anderson v. Charles, 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980), *480 the Supreme Court reversed an appellate court’s holding that the prosecutor violated the defendant’s due process rights under the rule of Doyle. The Supreme Court found that Doyle was not applicable to a case where the defendant did not remain silent after he was given Miranda warnings but allegedly gave one version of the incident to a detective and then at trial gave another version. In Anderson, the defendant in a first degree murder case was arrested while driving a stolen car that belonged to the victim. After advising the defendant of his Miranda rights, a detective asked the defendant about the stolen automobile. According to the detective, the defendant stated that he stole the car in Ann Arbor from the vicinity of Washtenaw and Hill Streets, located about two miles from a local bus station. However, at trial the defendant stated on direct examination that he took the victim’s unattended automobile from the parking lot of Kelly’s Tire Co. in Ann Arbor. On cross-examination, the prosecutor asked the defendant if he thought it were rather odd that if his in-court version were the truth that he did not come forward and tell anybody at the time he was arrested where he obtained the automobile. In distinguishing Doyle, the Court noted that Doyle involved two defendants who made no postarrest statements about their involvement in the crime. The Court stated:
Doyle bars the use against a criminal defendant of silence maintained after receipt of governmental assurances. But Doyle does not apply to cross-examination that merely inquires into prior inconsistent statements. Such questioning makes no unfair use of silence because a defendant who voluntarily speaks after receiving Miranda warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all.
Id. at 408, 100 S.Ct. at 2182.
Likewise, in State v. Summit, 454 So.2d 1100 (La.1984), cert. denied, 470 U.S. 1038, 105 S.Ct. 1411, 84 L.Ed.2d 800 (1985), the Louisiana Supreme Court found no due process violation in the use of the fact of the defendant’s silence, where the defendant was advised of his rights several times after arrest but made several inculpatory statements to the police before he eventually exercised his right to remain silent. The court stated that since the defendant repudiated his post-arrest statements at trial and gave a contradictory version of the incident, it was necessary for the state to establish the entire circumstances concerning the postarrest statements. The supreme court found that the state’s bringing before the jury the fact of the defendant’s assertion of his constitutional rights was not done in order to ascribe a guilty meaning to the defendant’s silence but served to demonstrate the inconsistencies between the defendant’s postarrest statements and his trial testimony. The court explained that unlike Doyle, the defendant was not induced by the required warnings to remain silent so that there was no possibility of inherent ambiguity in the defendant’s eventual silence; that this defendant’s trial testimony was impeached by direct evidence and his own statements; and that the fact of the defendant’s silence was not used principally to undermine by inference an exculpatory version related for the first time at trial but was used to directly counter the defendant’s trial testimony that he tried repeatedly and unsuccessfully to tell the police what had happened.
In State v. Wallace, 612 So.2d 183 (La.App. 1 Cir.1992), writ denied, 614 So.2d 1253 (La.1993), as in the case at hand, police officers indicated at trial that the defendant made some inculpatory statements after being advised of his Miranda rights, and the defendant did not testify at trial. The defendant in Wallace contended that the prosecutor improperly referred to his postarrest silence during closing arguments. J^During the closing arguments, the prosecutor stated:
Officer Ñores, Officer Boehm told you that when [the defendant] came back to the jail he said, I shot that bastard and I’d shoot all of them if you gave me a chance. Your hands are tied, but mine are not. What bastards is he talking about? I asked him. Blacks. Same thing Jeff Boehm said. Now, if there were a legitimate self-defense issue, it didn’t come out in what he told the police at that time.
Id. at 188.
The appellate court found that the prosecutor’s remarks referred to the inconsistency *481 between the defense asserted at trial (justification) and the defendant’s inculpatory statements and that as such, the closing arguments did not violate Doyle.
In State v. Probst, 623 So.2d 79 (La.App. 1 Cir.), writ denied, 629 So.2d 1167 (La.1993), the defendant contended that the trial court erred in overruling his objection to an improper remark made by the state during its closing arguments concerning the defendant’s postarrest silence. In rebuttal closing arguments, the prosecutor stated:
He was given an opportunity when the defendant was arrested to make a statement to straighten this whole mess up. He didn’t do it. He made one statement and said, “That’s it.” He had already called two lawyers. They’ve orchestrated this offense for you ladies and gentlemen from the day he was arrested until today and don’t be bushwhacked. Do like that [indicating] and get the smoke out of our face.
This has been a very highly orchestrated offense.
Id. at 86.
The appellate court found that the prosecutor’s rebuttal closing arguments did not violate Doyle.
In the case at hand, the defendant did not testify, but his defense included the assertion that the hydrocodone belonged to his wife and that he was taking the “rap” for her. The defendant was read his Miranda rights but chose to waive his right to remain silent and chose to speak with the officers. Detective Ricky Grabert and former Detective Chris Guillory testified that the defendant stated that the white tablets were pain killers and that he had traded a marijuana cigarette for the tablets. According to 17Detective Guillory, the defendant said that the white tablets were his. According to Detective Grabert, the defendant said that he did not have a prescription for the white tablets. Additionally, Detective Grabert tes-tiffed that the defendant did not tell him that the white tablets belonged to the defendant’s wife or that they belonged to anyone other than the defendant.
We find no Doyle violation in the case at hand. The defendant did not remain silent after being advised of his rights but gave inculpatory statements to investigative officers. The state’s reference to the defendant’s failure to come to his wife’s defense at the time of the arrest was not for the purpose of ascribing a guilty meaning to the silence but was to show inconsistencies between the defense asserted and the defendant’s inculpatory statements. Thus, we find no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 3:

In this assignment of error, the defendant asserts that the trial court erred in allowing the jury to hear other crimes evidence concerning his use of marijuana in the presence of his (apparently) twelve-year-old stepson. The defendant contends that the evidence was not relevant and was improperly used by the state in closing arguments, specifically referring to the statement that the defendant “abuses and used drugs” and the statement that the defendant “made a conscious decision to trade marijuana for Hydrocodone.”
Initially we note that, even assuming the state’s remarks in closing arguments as quoted above were improper, the defendant failed to make an objection to the remarks. “An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.” La.Code Crim.P. art. 841(A). Thus, defendant cannot be heard on appeal to complain of any error regarding the above-quoted |8portions of the state’s closing arguments.[2]
We will now address the allegedly erroneous admission of other crimes evidence concerning the defendant’s use of marijuana in the presence of his stepson. La.Code Crim.P. art. 770(2) provides for a mistrial, *482 upon the motion of a defendant, when the state during the trial or in argument refers directly or indirectly to inadmissible other crimes evidence. La.Code Crim.P. art. 771(2) provides for an admonition to the jury, upon the request of the defendant, when a remark is made by a witness or person other than the judge, the state, or a court official and is irrelevant or immaterial and of such a nature that it might create prejudice in the mind of the jury.
The record contains testimony that the defendant and his stepson had smoked marijuana together. When the defendant objected to this testimony, the trial court sustained the objection. The defendant did not seek an admonition to the jury or move for a mistrial in this regard. When an objection is sustained, a defendant cannot complain on appeal of the alleged error unless at trial he requested and was denied either an admonition to disregard the remark or a mistrial. State v. Sharp, 414 So.2d 752 (La.1982); State v. Miles, 402 So.2d 644 (La.1981); see also State v. Johnson, 443 So.2d 766 (La.App. 3 Cir.1983), writ denied, 445 So.2d 451 (La.1984) (holding that a defendant, who failed to lodge either a request for mistrial or an admonition to the jury after the trial court sustained his objection, was precluded from raising on appeal the issue of whether the state was allegedly impermissi-bly allowed to refer to other crimes by the defendant). In the instant ease, even assuming (without deciding) that the testimony constituted inadmissible other crimes evidence, since the defendant’s ^objection to the testimony was sustained and he did not request either a mistrial or an admonition to the jury after the trial court sustained his objection, he cannot raise on appeal the issue of whether the state was impermissibly allowed to refer to other crimes evidence in this regard. Thus, we find that this assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 4:

In his fourth assignment of error, the defendant contends that the trial court gave erroneous jury instructions by failing to properly define “possession.” He also argues that the instructions were improper as to the voluntariness of his confession.
The trial court is required to charge the jury as to the law applicable to the case. La.Code Crim.P. art. 802(1). La.R.S. 40:967(C) provides:
It is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance as classified in Schedule II unless such substance was obtained directly or pursuant to a valid prescription or order from a practitioner, as provided in R.S. 40:978 while acting in the course of his professional practice, or except as otherwise authorized by this Part.
Additionally, in State v. Clay, 95-814, p. 3 (La.App. 3 Cir. 3/6/96); 670 So.2d 704, 706, we explained:
In order to convict a defendant for possession of cocaine under La.R.S. 40:967(C), the state must prove beyond a reasonable doubt that the defendant knowingly or intentionally possessed the cocaine. The determination of whether there is sufficient evidence to convict a defendant of possession depends on the peculiar facts of each ease. Guilty knowledge is an essential element of the crime of possession, and guilty knowledge and intent may be inferred from the circumstances of the transaction. Constructive possession is sufficient to violate the prohibition against possession, and a person may be in constructive possession of a drug, even though not in physical possession, if it is subject to his dominion and control. Additionally, a person may be deemed to be in joint possession of a drug which is in the physical custody of his companion if he willfully and knowingly shares with his companion the right to control it. However, the mere presence of an individual in an area where the drugs are found or the mere association with a person found to be in possession of the drugs is insufficient to constitute constructive possession.
(Citations omitted).
| ipThe trial court’s verbal instructions as to possession were as follows:
The defendant is charged with possession of a controlled dangerous substance, *483 Schedule II, Hydrocodone. It is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance such as Hydrocodone, unless such substance was obtained directly or pursuant to a valid prescription or order from a practitioner while acting in the course of his profession or professional practice.
A person may be in constructive possession of a drug even though it is not in his physical custody, if it is subject to his dominion and control. Also, a person may be deemed to be in joint possession of a drug which is in the possession or physical custody of another person, if he willfully and knowingly shares with the other the right to control it. However, mere association or proximity without more is insufficient.
Thus, in order to convict the defendant of Possession of a Controlled Dangerous Substance, Hydrocodone, you must find: (1) That the defendant knowingly and intentionally possessed a controlled dangerous substance; (2) That the substance was not obtained directly or pursuant to a valid prescription or order from a practitioner while acting in the course of his professional practice.
The trial court also explained in the jury instructions general and specific criminal intent.
It is readily apparent that the trial court properly instructed the jury as to the applicable law for possession of a Schedule II narcotic, as the instructions almost track the law as set forth above. The defendant’s argument in this regard lacks merit.
Regarding the instruction as to the volun-tariness of the defendant’s statements, the trial court stated:
The defendant is not required to testify. No presumption of guilt may be raised, and no inference of any kind may be drawn from the fact that the defendant did not testify.
If the State offers evidence of a statement by the defendant, you must first determine whether the statement was in fact made. You must then consider whether the statement, if made, was accurately recorded or repeated.
If you find that the defendant made a statement, you must also determine the weight or value that the statement should be accorded, if any. In determining the weight or value to be accorded a statement made by the defendant, you should consider all the circumstances under which the statement was made. In making that determination, you should consider whether the statement was made freely and voluntarily without the influence of fear, duress, threats, inducements, or promises.
It is the defendant’s position that the trial court erred in failing to instruct the Injury that it must ignore a statement that it found to be involuntary. The defendant has not provided this court with any authority for his position. In any event, we find that the instructions adequately addressed the defendant’s concerns by providing that the jury must determine the weight to give the statement, “if any,” i.e., the jury could refuse to give weight to the statement or ignore it, and by providing that in making the determination as to the weight to be given a statement, the jury should consider whether it was voluntary. Thus, we find no merit to the defendant’s argument in this regard.

ASSIGNMENT OF ERROR NO. 5:

In this assignment of error, the defendant contends that there were errors in the jury selection process but that this part of the record has not been transcribed. The defendant seeks to have this part of the record transcribed and to be allowed to brief the jury selection issues.
In his written assignments of error filed in the record on this appeal, the defendant sets forth that the trial court erred in excusing jurors who should not have been excused for cause or peremptorily by the state and in not excusing jurors who should have been excused for cause. In his designation of the record, which was filed on the same day as his motion for appeal, the defendant specifically requested a “[tjranseript of the trial on May 16 and 17, 1995,” and the minutes reflect that the voir dire was held on May 16, 1995. Additionally, the defendant requested *484 the transcript of all arguments, objections, and rulings.
We find that the defendant took the appropriate measures to obtain the transcript of the voir dire, which was not provided. We also note that under Uniform Rules — Courts of Appeal Rule 2-1.9, in criminal cases, the record must contain all or any portion of the voir dire designated by the defendant. Finding that the requested transcript is necessary for a full and fair review, we have exercised our authority underjjjLa.Code CrimJP. art. 914.1(D) to designate the voir dire transcript. That transcript has been received by this court, and, we have reviewed the voir dire transcript.
Initially, fourteen potential jurors were selected for questioning. The defendant challenged two for cause, and both challenges were rejected by the trial court. The first challenged juror was Winston Hunt. He had testified that his granddaughter was a murder victim and that the alleged perpetrator was a man named Leslie Martin. Outside of the presence of the jury, defendant’s counsel informed the trial court that he was advising the defense team on appeal in that case but had never enrolled as counsel of record. There was no evidence that Mr. Hunt was aware of the defense counsel's involvement in the matter, and we find no error in the trial court’s rejection of this challenge for cause.
The defendant also challenged Allen Roth, who testified that he played golf from time to time with the Calcasieu Parish district attorney.[3] However, Mr. Roth also testified that the district attorney never discussed his business during those occasions and that his relationship with the district attorney would not prevent him from being a fair and impartial juror. The trial court accepted Mr. Roth’s commitment to fairness and denied the challenge for cause. We find no error in that decision.
After his two challenges for cause were rejected, the defendant peremptorily challenged Mr. Hunt, Mr. Roth, and three other members of the original fourteen prospective jurors. The state challenged none of the fourteen for cause but peremptorily challenged four of the original fourteen.
Two additional potential jurors were called for questioning. One was peremptorily challenged by the state, and the other was accepted by both the defendant and the state, thereby completing the jury. An alternate was then selected with the state ligand the defendant being given one peremptory challenge each by the trial court. The defendant challenged for cause the first person called, and that challenge was granted by the trial court. The state challenged the next person peremptorily. The next prospective juror was ’ accepted by both parties. We find no error in the jury selection process as alleged by the defendant.
ERROR PATENT
La.Code Crim.P. art. 930.8(C) provides that the trial court shall inform the defendant, at the time of sentencing, of the prescriptive period for postconviction relief. The record reflects that-the trial court did not so inform the defendant. We direct the trial court to inform the defendant of the prescriptive period for postconvietion relief by sending the appropriate written notice to the defendant within ten days of the rendition of this opinion and to file in the record of the proceedings written proof of the defendant’s receipt of the notice. See State v. Fontenot, 616 So.2d 1353 (La.App. 3 Cir.), writ denied, 623 So.2d 1334 (La.1993).
DISPOSITION
For the foregoing reasons, we affirm the defendant’s conviction and sentence. We further direct the trial court to inform the defendant of the prescriptive period for post-conviction relief by sending the appropriate written notice to the defendant within ten days of the rendition of this opinion and to file in the record of the proceedings written proof of the defendant’s receipt of the notice.
*485 AFFIRMED AND REMANDED WITH INSTRUCTIONS.

. This statutory provision was repealed by Acts 1995, No. 1300, § 2.

. After the jury retired for deliberations, the defendant moved for a mistrial on the basis of "the sum total of the misconduct in the State's closing argument which made various comments on the defendant's assertion of his constitutional rights and various other matters.” Defendant does not assert in brief that this motion for mistrial was directed in part to the allegedly improper statements concerning his drug use, and we will not supply such a meaning to the motion as made and without a contemporaneous objection.

. The district attorney did not participate in the trial as the prosecution was handled by an assistant district attorney.