833 So.2d 1207 (2002)
STATE of Louisiana, Appellee
v.
Antonio R. ROBINSON, Appellant.
No. 36,147-KA.
Court of Appeal of Louisiana, Second Circuit.
December 11, 2002.
*1209 Carey J. Ellis, III, Louisiana Appellate Project, Rayville, for Appellant.
Richard Ieyoub, Attorney General, James M. Bullers, District Attorney, Jason Brown, Assistant District Attorney, for Appellee.
Before GASKINS, HARRISON and DREW, JJ.
GASKINS, J.
The defendant, Antonio Rodriguez Robinson, was originally charged with forcible rape. A jury convicted him of attempted forcible rape. He was sentenced to serve 20 years at hard labor, with credit for time served, to run consecutive with any other sentence, without benefit of parole. We affirm the defendant's conviction and sentence.

FACTS
After school on May 13, 1999, the 17-year-old victim went to the Carver Street home of her friend, Latricia. Since Latricia's family did not have a telephone in their house at that time, the victim and Latricia later walked to a nearby pay phone to call the victim's mother to come pick her up. After the victim called her mother, the victim and Latricia were approached by the defendant, who was Latricia's *1210 neighbor, and Edgar Brown. The defendantwho was known by the street name "Chachi"grabbed the victim around the waist from behind and began dragging her to his house, which was nearby. The victim broke loose but was quickly grabbed again by the defendant. She repeatedly called out to Latricia for help. Edgar blocked Latricia.
When he reached the back porch of his house, the defendant found that the back door was locked. He instructed Edgar to enter the house through the front door and unlock the back door for him. The defendant remained on the porch, restraining the victim from escaping. After Edgar unlocked the back door, the defendant dragged the victim inside and locked the door behind him. Edgar continued to frustrate Latricia's efforts to aid her friend by blocking her path.
Once inside the house, the defendant dragged the victim into a bedroom and threw her on a bed. He attempted to remove the victim's clothes but she resisted. The defendant was finally able to pull the victim's pants down to her knees. He pinned her hands above her head and pushed her legs toward her head. He then penetrated the victim. When she attempted to call for help, he placed his hand over her mouth.
When the victim emerged from the defendant's house 15 to 20 minutes after the defendant dragged her inside, she was upset and crying. She told Latricia to come on and they returned to the pay phone. She refused to tell Latricia what had happened. The victim's mother soon arrived to pick her up. Noticing her daughter's tearful demeanor, the victim's mother asked what was wrong. The victim refused to tell her. When they arrived home, the victim went immediately to the bathroom, took a bath, and then went to bed.
The next morning, the victim took another bath before going to school. After she arrived at school, she did not talk to her friends as she usually did. Latricia sought the victim out and asked what was wrong. The victim gave her note in which she stated that she had been raped. Latricia and several other friends insisted that the victim go to the school office. The victim's parents were called, and the school resource officer was notified of the situation. He, in turn, contacted the Bossier Police Department.
The victim was taken to the hospital for a rape examination. She then went to the police department and gave a taped statement. The police also spoke to Latricia and Edgar, who corroborated the victim's account. The police identified "Chachi" as the defendant.
When two officers went to the defendant's residence, they detected movement inside but no one answered the door. When one officer called the house on his cell phone, the defendant answered; he said he would come outside and talk to the officers. Instead, the defendant jumped from a side window and ran. However, he was swiftly apprehended and taken to the police station for questioning.
The defendant admitted that he had sexual intercourse with the victim but claimed that she consented. However, as the officers were leaving the interrogation room, the defendant repeatedly said he was sorry and he shouldn't have done it. The defendant was arrested for forcible rape.
Following a jury trial, the defendant was convicted of attempted forcible rape. His motions for new trial and for post verdict judgment of acquittal were denied. He was sentenced to 20 years at hard labor, without benefit of parole, to be served consecutively with any other sentence. After the defendant made an obscene gesture *1211 in the courtroom, he was held in contempt of court and given a consecutive sentence of six months. The defendant's timely motion to reconsider sentence was denied.
The defendant appeals.

SUFFICIENCY OF EVIDENCE
The defendant argues that the evidence was insufficient to support his conviction. In particular, he asserts that the victim's testimony was not supported by physical evidence, and was contradicted and impeached by two defense witnesses. The state argues that the evidence was sufficient to support the conviction, and the jury's determinations regarding witness credibility should not be disturbed.

Law
The question of sufficiency of the evidence is properly raised by a motion for post verdict judgment of acquittal. La. C. Cr. P. art. 821; State v. Gay, 29,434 (La. App.2d Cir.6/18/97), 697 So.2d 642. The defendant properly raised the issue of sufficiency of the evidence in the trial court in a motion for post verdict judgment of acquittal, which was denied by the trial court.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard for appellate review of a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Ponsell, 33,543 (La. App.2d Cir.8/23/00), 766 So.2d 678, writ denied, 2000-2726 (La.10/12/01), 799 So.2d 490; State v. Owens, 30,903 (La. App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
However, this court's authority to review questions of fact in a criminal case does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Ponsell, supra.
La. R.S. 14:42.1, in relevant part, states:
A. Forcible rape is rape committed when the ... vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
*1212 To support a conviction for attempted forcible rape, the state must prove that defendant had the specific intent to commit forcible rape and that he did an act for the purpose of, and tending directly toward, the accomplishing of his objective. La. R.S. 14:27 and 14:42.1; State v. Dorsey, 30,683 (La.App.2d Cir.6/24/98), 718 So.2d 466, writ denied, 98-2227 (La.12/18/98), 732 So.2d 54; State v. Bryant, 607 So.2d 11 (La.App. 2d Cir.1992), writ denied, 92-3082 (La.2/25/94), 632 So.2d 760; State v. Bailey, 585 So.2d 1245 (La.App. 2d Cir.1991). Specific intent, being a state of mind, need not be proved as a fact but may be inferred from the circumstances involved and the actions of the accused. State v. Graham, 420 So.2d 1126 (La.1982); State v. Dorsey, supra; State v. Bailey, supra.
The testimony of a sexual assault victim alone is sufficient to convict a defendant. State v. Ponsell, supra; State v. Bailey, supra; State v. Doby, 540 So.2d 1008 (La.App. 2d Cir.1989), writ denied, 544 So.2d 398 (La.1989). Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. State v. Ponsell, supra. See also State v. Johnson, 96-0950 (La.App. 4th Cir.8/20/97), 706 So.2d 468, writ denied, XXXX-XXXX (La.7/2/98), 724 So.2d 203, cert. denied, 525 U.S. 1152, 119 S.Ct. 1054, 143 L.Ed.2d 60 (1999). An absence of forensic evidence of rape is not fatal to an attempted forcible rape case. State v. Bryant, supra.

Discussion
The testimony of the victim alone, viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime of the responsive verdict of attempted forcible rape, as well as the charged offense of forcible rape. Her testimony supports the defendant's conviction of attempted forcible rape because it proves that the defendant had the specific intent to commit forcible rape and that he did an act for the purpose of, and tending directly toward, the accomplishing of his objective.
Also, the victim's account was corroborated with regard to the circumstances immediately surrounding the rape by the testimony of Latricia and Edgar. In particular, Latricia corroborated the fact that the defendant used physical force to get the victim into his house, that the victim did not want to go, and that the victim called to her for help. Latricia and Edgar both corroborated that Edgar prevented Latricia from helping the victim by physically blocking her and by telling her to leave the defendant and the victim alone. Even Edgar admitted that the victim looked afraid before she entered the defendant's home and then seemed mad and crying when she left. Despite his initial attempt to characterize the victim as willingly sitting on the defendant's lap, Edgar finally admittedafter being impeached with his statement to the policethat the defendant had the victim restrained on the porch so she couldn't escape. He also conceded that he was "concerned" for the victim while she was in the house with the defendant. Further corroboration of the victim's account was made by testimony of the victim's mother and the investigating officers.
The defendant points to the lack of forensic evidence of rape. The victim testified that she bathed twice between the time of the attack and the rape examination at the hospital the following day. The nurse who conducted the examination testified that such action affected the ability to recover forensic evidence of sexual assault. *1213 As noted above, forensic evidence is not necessary for a conviction in a sexual assault case.
The defendant presented the testimony of two witnesses who said that they had seen the victim and the defendant acting like "boy friend and girl friend" prior to the offense to contradict the testimony of the victim that she did not know the defendant before the incident. However, these witnesses were friends and neighbors of the defendant's mother; one of them frankly admitted that she did not want to see the defendant go to jail. Both Latricia and Edgar verified the victim's testimony that she never dated the defendant.
In convicting the defendant of attempted forcible rape, it is apparent that the jury chose to believe the victim's testimony instead of the defendant's claim of consensual sex. This court's authority to review questions of fact in a criminal case does not extend to credibility determinations made by the trier of fact. Furthermore, we attach no "sinister connotation" to the jury's return of a responsive verdict of attempted forcible rape instead of forcible rape. See State v. Dewhirst, 527 So.2d 475 (La.App. 5th Cir.1988), writ denied, 535 So.2d 740 (La.1989). A jury has the prerogative to compromise and render a lesser verdict whenever it could have convicted as charged. State v. Mitchell, 35,970 (La.App.2d Cir.5/8/02), 818 So.2d 807; State v. Bryant, 33,078 (La.App.2d Cir.3/1/00), 754 So.2d 387.
This assignment is without merit.

CHALLENGED JUROR
The defendant argues that the trial court committed error by denying his challenge for cause against prospective juror B. F., who was a childhood rape victim and who had an aunt who was a victim of rape/murder.
During group voir dire examination, a prospective juror requested to speak to the court without the presence of unnecessary personnel. The courtroom was cleared with the exception of the court reporter, one representative from the state, the defendant and his attorney. B.F. stated that, as a child, she had been a victim of ongoing sexual abuse (which she classified as rape) by a relative. The sexual abuse ceased when she was about 12 years old. She never reported the abuse, and she had only told her spouse and a few close friends. B.F. stated that she had received counseling for her experience several years ago.
Under questioning by the prosecutor, B.F. stated her belief that, as a Christian, she could be a fair and impartial juror. She felt that she had come to grips with what had happened to her as much as possible, and stated that she would not hold what had happened to her against this defendant.
Additionally, B.F. had an elderly aunt who was the victim of a rape/murder in Alexandria about 10 to 15 years ago. B.F. was not a witness to the crime, and she did not follow the proceedings. However, she recalled that the criminal was apprehended, convicted and was serving time in prison. When asked if that experience would at all affect her ability to be a fair and impartial juror, B.F. said it would not.
When questioned by defense counsel, B.F. stated that she could make a fair decision after hearing all the evidence and that she believed she could separate the emotions from the facts. She did not necessarily think she would be "more fair" if she had not had these experiences. She specifically stated that she was not trying to get onor offthe jury.
The trial court asked B.F. if she were on trial, would she be comfortable with having a juror with her mind-set determining her *1214 fate; she said that she would. A challenge for cause was made by the defendant and denied by the trial court. The defendant entered an objection for the record and exercised a peremptory challenge against B. F.

Law
In order for a defendant to prove reversible error warranting reversal of both his conviction and sentence, he need only show the following: (1) erroneous denial of a challenge for cause; and (2) use of all his peremptory challenges. State v. Hart, 96-0697 (La.3/7/97), 691 So.2d 651; State v. Richardson, 33,272 (La.App.2d Cir.11/1/00), 779 So.2d 771, writ denied, XXXX-XXXX (La.10/26/01), 799 So.2d 1151; State v. Loyd, 35,637 (La.App.2d Cir.2/27/02), 810 So.2d 1214.
Challenges for cause are governed by La. C. Cr. P. art. 797, which provides in pertinent part:
The state or the defendant may challenge a juror for cause on the ground that:
. . . .
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence....
A trial court is vested with broad discretion in ruling on challenges for cause, and its ruling will be reversed only when a review of the entire voir dire reveals that the court abused its discretion. State v. Richardson, supra; State v. Loyd, supra.
A refusal by a trial judge to excuse a prospective juror on the ground he is not impartial is not an abuse of discretion where, after further inquiry or instruction (frequently called "rehabilitation"), the potential juror has demonstrated a willingness and ability to decide the case impartially according to the law and the evidence. State v. Richardson, supra;
The fact that a juror personally has been the victim of a crime will not necessarily preclude that juror from serving on a jury as long as the juror's partiality has been unaffected. State v. Walker, 577 So.2d 770 (La.App. 2d Cir.1991), writ denied, 581 So.2d 704 (La.1991); State v. Thom, 615 So.2d 355 (La.App. 5th Cir. 1993). Nor is a prospective juror automatically rendered incompetent to serve because a relative was a crime victim. State v. Thom, supra; State v. Walker, supra; State v. Green, 94-986 (La.App.3d Cir.3/1/95), 651 So.2d 435; State v. Thibodeaux, 96-471 (La.App. 3d Cir.12/11/96), 687 So.2d 477, writ denied, 97-0060 (La.5/30/97), 694 So.2d 243. This is true even when the crime is similar to the one of which the defendant stands charged. State v. Thom, supra; State v. Richardson, supra.

Discussion
The record reflects that the defense exhausted all 12 of its peremptory challenges. B. F.'s responses to questioning by the state, defense and the trial court, taken as a whole, clearly support the trial court's conclusion that her past experiences would not interfere with her ability to act impartially, and do not reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied. The declaration of this otherwise fair and impartial juror that she was previously the victim of a crime similar to that with which the defendant stood charged did not render her incompetent to serve. The record does not show *1215 an abuse of the trial court's discretion in denying the defendant's challenge for cause as to B. F.
This argument is without merit.

EXCESSIVE SENTENCE
The defendant argues that the trial court erred in imposing the maximum possible sentence and that is it constitutionally excessive for a first felony offender. He also asserts that the trial court did not adequately set forth the factual basis for the sentence imposed, nor did it particularize the sentence.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. State v. Lanclos, 419 So.2d 475 (La.1982).
The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864; State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.1988), writ denied, 521 So.2d 1143 (La.1988). There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App.2d Cir.3/1/00), 754 So.2d 392, writ denied, XXXX-XXXX (La.2/2/01), 783 So.2d 385; State v. Callahan, 29,351 (La.App.2d Cir.2/26/97), 690 So.2d 864, writ denied, 97-0705 (La.9/26/97), 701 So.2d 979.
The second prong of the test to determine whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La. 1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, supra.
As a general rule, maximum or near maximum sentences are to be reserved for the worst offenders and the worst offenses. State v. Adger, 35,111 (La. App.2d Cir.9/26/01), 797 So.2d 146.
Before imposing sentence, the trial court considered the information found in a presentence investigation (PSI) report. The defendant's parents were divorced; his father lived in Shreveport and his mother in Bossier City. (The instant rape occurred at the mother's residence in Bossier.) Although 20 years old at the time of the offense, the defendant was still attending high school. He had never been employed, married or enlisted in the armed forces. There was no indication of a juvenile record. Although he had been arrested in 1996 on a narcotics charge, the PSI report showed no disposition on this matter. At the time of sentencing, the defendant had pending charges of carnal knowledge of a juvenile and unauthorized use of a motor vehicle.
*1216 Our review of the record shows that the trial court adequately articulated its reasons for imposing the maximum sentence for attempted forcible rape. Like the trial court, we note as a compelling aggravating factor the defendant's complete and total lack of remorse.[1] Additionally, the trial court considered the great, lifelong harm done to the victim. She was a 17-year-old high school junior at the time of the rape. A week after the attack, she began to receive counseling through the YWCA Sexual Assault Center. She attended regularly for about a year and a half until about the time she went away to college. She experienced flashbacks and nightmares about the rape. The trial court received letters from the victim's father and her sexual assault counselor which disclosed that, as a result of being raped, the victim suffered from post-traumatic stress disorder, depression and suicidal ideations.
Furthermore, the trial court also considered that the defendant had, in fact, committed a forcible rape. The court was of the opinion that the jury had returned the verdict of only attempted forcible rape as a result of the defendant's youthful age.
After careful review, we find that this record supports the imposition of the maximum sentence for this defendant for his conviction of the responsive verdict of attempted forcible rape, considering the circumstances of the case and the background of the defendant. The defendant's 20-year hard labor sentence is neither grossly out of proportion to the seriousness of the offense nor nothing more than a purposeless and needless infliction of pain and suffering. That is, when the instant crime and the defendant's punishment are viewed in light of the harm done to society, the defendant's sentence does not shock the sense of justice.[2]
This assignment of error lacks merit.

CONCLUSION
The defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] According to information in the PSI report, while being led away by deputies after the trial, the defendant looked at the victim and said, "Kill that bitch." Following the imposition of sentence, the defendant was held in contempt and sentenced to a consecutive sentence of six months for making an obscene gesture in the courtroom. The transcript also shows that the defendant said, "F___ you" as the court imposed sentence. The record does not specify at whom the defendant's obscenities were directed.
[2] See State v. James, 573 So.2d 1277 (La.App. 4th Cir.1991), writ denied, 600 So.2d 675 (La. 1992), in which a defendant charged with forcible rape was convicted of attempted forcible rape and sentenced to 20 years at hard labor after the victim testified that the act of rape was completed. See also State v. Capps, 461 So.2d 562 (La.App. 3d Cir.1984), in which a defendant originally charged with aggravated rape of a 10-year-old girl was convicted of attempted forcible rape and sentenced to 20 years at hard labor although there was some evidence of penetration.