WILLIAMS, J.
|2The defendant, Eddie C. Johnson, Jr., was charged by indictment with two counts of aggravated rape, in violation of LSA-R.S. 14:42(A)(4). After a jury trial, the defendant was found guilty as charged of both counts. The defendant’s motions for new trial and for post-verdict judgment of acquittal were denied. The trial court sentenced defendant to serve life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence for each count, with the sentences to run concurrently. The defendant appeals his convictions and sentences. For the following reasons, we affirm.
FACTS
During the evening of April 24, 2007, the defendant was visiting at the home of C.W., a single mother of four boys, K.W., J.W., X.W. and S.W. After waking from a nap, C.W. walked into her sons’ bedroom, which contained a bunkbed. She saw K.W. lying in the top bunk with his feet up Lagainst the. wall and defendant was standing between the child’s legs. After the defendant' left the house, C.W. spoke with K.W. and called the police. During an interview at the Gingerbread House, K.W. stated that defendant had put his mouth on KW.’s genital area a number of times. K.W.’s cousin, J.O., subsequently confided to a forensic interviewer that the defendant had also performed oral sex on him.
The trial court conducted pretrial hearings on various evidentiary issues, finding that the videotaped interviews of the minor children and the incriminating statements made by defendant after his arrest would be admissible at trial. The state filed a notice, under LSA-C.E. art. 412.2, of its intent to use at trial eviclepce of similar crimes, wrongs or acts committed by the defendant. After a hearing, the trial court held that testimony regarding the defendant’s prior sexual abuse of two other minor children, A.S. and J.W., would be admitted into evidence.
At trial,. C.W. testified that she became friends with the defendant and that he watched her children after school when she was working. C.W. stated that J.W. and K.W. had spent the night at the defendant’s home on occasion. C.W. testified *414 that at one point she had told the defendant not to come to her house after K.W. told her that defendant had “messed with him,” without giving details. However, C.W. eventually allowed defendant to return to her chouse after he said that K.W. was mad at him because he did not buy K.W. a certain toy.
C.W. testified that one evening in April 2007, she walked into the bedroom shared by two of her sons and saw K.W. lying on the top bunk with the defendant standing between KW.’s legs at the foot of the bed. She asked the defendant what was happening and he replied “nothing.” Once the defendant left, C.W. asked K.W. what had happened and the child said that when he woke up, his private area was wet and there was some money in his pants’ pocket. C.W. then called the police, who questioned each of the children separately and asked C.W. to bring them to the Gingerbread House, a child advocacy center, to be interviewed at a later date. A few days after the incident, the defendant gave C.W. a letter, which stated that someone named Mike Jacobs was the person whom she had seen standing in her sons’ room that night.
The victim, K.W., testified that he knew the defendant because he used to live close to his family and that he had stayed at the defendant’s house occasionally. K.W. stated that he recalled going to the Gingerbread House to answer questions and later watching a video recording of the interview. In the video, which was played in court, K.W. told the forensic interviewer that he was 11 years old and that the defendant had touched his |5penis with his mouth on several occasions. K.W. stated that he was in the fifth grade the first time, and in the sixth grade the last time, that defendant had touched him in that manner. During the interview, K.W. was supplied with an anatomical drawing of a boy and he circled the genital area to indicate where he was touched by the defendant.
In his trial testimony, K.W. stated that the video was an accurate recording of his prior statement. K.W. testified that the defendant gave him money and told him not to tell anyone about what had happened. On cross-examination, K.W. explained that he was touched by defendant three separate times the day his mother caught defendant in the bedroom. K.W. stated that the defendant first touched him when he was in his room alone. The second time, K.W. was in his brothers’ room and afterward, defendant gave K.W. five dollars and told him not to tell anyone. The third time was when KW.’s mother caught the defendant and asked him to leave.
The victim of the second charged offense, J.O., testified that C.W. was his aunt, that he went to her house every day after school and that the defendant watched J.O. and his cousins while their mothers worked. J.O. recalled being questioned at the Gingerbread House. The video recording of J.O.’s interview was played in open court. In the video, J.O. stated that he was 11 years old and that once, after waking up, he had caught the defendant |6touching his penis with his mouth. J.O. stated that he had also seen the defendant attempting to perform oral sex on K.W. During trial, J.O. testified that he did not initially tell the interviewer at the Gingerbread House that he had been sexually abused by the defendant because J.O. thought his father would hurt the defendant if he knew. J.O. stated that although he had told the interviewer the defendant had sexually abused him only once, actually the abuse had happened many times.
KW.’s brother, J.W., testified that the defendant lived around the corner from his family and that he and K.W. had spent the *415 night at the defendant’s house a few times. J.W. stated that the brothers slept in the same room as the defendant, who slept in the same bed as K.W. In the Gingerbread House interview, J.W. stated that he had been told by K.W. that defendant had performed oral sex on K.W. while he was sleeping. J.W. said that the defendant had abused K.W. at the defendant’s house and at J.W.’s house. At trial, contrary to his statement at Gingerbread House, J.W. testified that defendant had sexually abused him during the school year. J.W. stated he did not tell the interviewer about being abused by defendant because he was embarrassed and did not want to talk about the matter.
Jennifer Flippo testified that in 2007, she was employed as a forensic interviewer with the Gingerbread House. Flippo stated that the videotapes 17shown to the jury were accurate recordings of her interviews with the children. She testified that during their interviews, both K.W. and J.O. had indicated, using an anatomical drawing, that the defendant had put his mouth on the child’s penis.
A.S. testified that in August 1999 he had contact with the defendant when he visited his cousin, who lived in the same vicinity. A.S. stated that he was either 10 or 11 years old when he met the defendant. A.S. testified that on one occasion, when he left his cousin’s house to go across the street to buy candy from a woman, the defendant followed him, picked him up by his ankles and performed oral sex on him. A.S. stated that he later told his mother about the abuse and she filed a complaint with the police. A.S. testified that he told the police he had been sexually abused by the defendant, but he was never arrested.
Shreveport Police Lieutenant Dennis Pratt testified that in August 1999, he responded to a complaint that defendant had committed sexual battery upon A.S., a minor child. Officer Pratt stated that he interviewed A.S. about the incident and also questioned the defendant, who denied the allegations and said that A.S. was a troublemaker. Officer Pratt testified that the defendant was not arrested then because of a lack of evidence, but that | aother allegations against defendant at the time would have changed the course of his investigation.
Shreveport Police Detective Jeff Allday testified that on April 24, 2007, he responded to a call to C.W.’s home to investigate claims of sexual abuse. Detective Allday spoke with C.W. about what she had observed and told her to bring the children to the Gingerbread House to be interviewed. Allday testified that he advised defendant of his Miranda rights following his arrest and that defendant agreed to answer questions. The defendant initially denied any wrongdoing, stating that another person, “Michael Jacobs,” was the actual perpetrator. After being told that no such person could be located, the defendant admitted he had been present at C.W.’s house on the evening in question.’ Detective Allday stated that he told the defendant that DNA had been collected from K.W. at the scene that evening, an untrue statement. Detective All-day testified that defendant then indicated his DNA might be present and that defendant later confessed to performing oral sex on K.W. and J.O. The audio recording of the defendant’s confession to sexually abusing both K.W. and J.O. was played in open court.
The defendant testified at trial and denied that he had raped K.W. and J.O. Defendant stated that he was attempting to pick up K.W. to take him to his room when C.W. saw him standing between the child’s legs. The 19defendant testified that he had lied to Detective Allday when he was interviewed because he was depressed *416 and fearful following his arrest. The defendant stated that he was telling the truth at trial because he was no longer afraid. On cross-examination, the defendant admitted that “Michael Jacobs” did not exist. He also admitted that K.W. and J.W. had spent the night in his bedroom, but denied sleeping in the same bed with'either of the boys. The defendant stated that K.W., J.O., J.W. and A.S. were all lying when they testified about the sexual abuse committed by defendant.
Thereafter, the jury found defendant guilty as charged on both counts. Defendant’s motions for new trial and post-verdict judgment of acquittal were denied. The trial court imposed a sentence of life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence on each count, with the sentences to run concurrently. The defendant’s motion to reconsider sentence was denied. This appeal followed.
DISCUSSION
The defendant contends the evidence was insufficient to support his convictions of aggravated rape. Defendant argues that the evidence did not prove guilt beyond a reasonable doubt because no eyewitnesses were presented to corroborate the children’s vague and inconsistent testimony.
LSA-R.S. 14:42(A)(4) provides in pertinent part:
_Jj¿A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more, of the following circumstances:
[[Image here]]
(4)- When the victim is under the age of thirteen years. Lack of knowledge of the victim’s age shall not be a defense.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond1 a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Murray, 36,137 (La.App.2d Cir.8/29/02), 827 So.2d 488, writ denied, 2002-2634 (La.9/5/03), 852 So.2d 1020.
An appellate court reviewing the sufficiency of the evidence must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence1 must be sufficient for a rational juror to conclude beyond a reasonable doubt that defendant was guilty of every essential | element of the crime. State v. Jacobs, 504 So.2d 817 (La.1987); State v. Adkins, 39,724 (La.App.2d Cir.6/29/05), 907 So.2d 232, writ denied, 2006-2514 (La.5/4/07), 956 So.2d 607.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Wiltcher, 41,981 (La.App.2d Cir.5/9/07), 956 So.2d 769; State v. Burd, 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219, writ denied, 2006-1083 (La.11/9/06), 941 So.2d 35. Such testimony alone is sufficient even where the state does1 not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. State v. Robinson, 36,147 (La.App.2d Cir.12/1,1/02), 833 So.2d 1207; State v. Ponsell, 33,543 (La.App.2d Cir.8/23/00), 766 So.2d 678, writ *417 denied, 2000-2726 (La.10/12/01), 799 So.2d 490. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La.12/14/07), 970 So.2d 529.
1 TgIn the present case, K.W. and J.O. were interviewed at the Gingerbread House when they were both 11 years old and each child stated that he had been sexually abused by the defendant. Their subsequent trial testimony, while revealing that the sexual abuse was more extensive than previously divulged, was substantially similar to their earlier allegations. The victims’ testimony, which was obviously believed by the trier-of-fact, was sufficient to prove that the defendant committed the charged crimes. Additionally, the defendant confessed to having performed oral sex on K.W. and J.O. when they were under the age of 13; although he later recanted, the jury chose to believe K.W. and J.O. and not the defendant. This court affords great deference to such credibility determinations. Based upon this record, the evidence presented overwhelmingly supported the defendant’s convictions. This assignment of error lacks merit.

Responsive Verdicts

The defendant contends the jury charge as to Count Two improperly failed to include the responsive verdicts of molestation of a juvenile and indecent behavior with a juvenile. The defendant argues that because the allegations against the defendant were similar for both counts, the jury could have been confused as to why there were fewer responsive verdicts for [ lsCount Two, and thus chose to find him guilty of aggravated rape to make the verdicts coincide.
LSA-C.Cr.P. art. 814(A)(8.1) provides the responsive verdicts for the offense of aggravated rape of a child under the age of thirteen:
Guilty.
Guilty of attempted aggravated rape.
Guilty of forcible rape.
Guilty of attempted forcible rape.
Guilty of simple rape.
Guilty of attempted simple rape.
Guilty of sexual battery..
Guilty of molestation of a juvenile.
Guilty of attempted molestation of a juvenile.
Guilty of indecent behavior with a juvenile.
Guilty of attempted indecent behavior with a.juvenile.
Not guilty.
LSA-C.Cr.P. art. 814(C) provides:
Upon motion of the state or the defendant, or on its own motion, the court shall exclude a responsive verdict listed in Paragraph A if, after all the evidence has been submitted, the evidence, viewed in a light most favorable to the state, is not sufficient reasonably to permit a finding of guilty of the responsive offense.
LSA-C.Cr.P. art. 801 states:
A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. The nature of the objection and grounds therefor shall be stated at the time of objection. The court shall give the party an opportunity to make the objection out of the presence of the jury.
1,4Before a conviction can be reversed on the ground that the trial court failed to *418 include all responsive verdicts, the defendant must demonstrate that the exclusion of a responsive verdict was prejudicial and that fundamental due process has been violated. State v. Serio, 94-131 (La.App. 5th Cir.6/30/94), 641 So.2d 604. An erroneous jury charge is not prejudicial when the jury returns a verdict of guilty of the crime charged. State v. Freeman, 444 So.2d 243, 245 (La.App. 1st Cir.1983) (citing State v. Prestridge, 399 So.2d 564 (La.1981)).
In the present case, contrary to the state’s contention that defendant failed to object to the exclusion of the responsive verdicts for Count Two, the record shows that prior to the court’s charge to the jury, defense counsel objected “to omitting any of the possible responsive verdicts as to the aggravated rape charges.” Thus, the record does not indicate that defendant waived the issue regarding exclusion of the responsive verdicts.
However, because the jury returned a verdict of guilty as charged for both counts of aggravated rape, notwithstanding the fact that the responsive verdicts of molestation of a juvenile and indecent behavior of a juvenile were given for the first count, the defendant has failed to demonstrate that he was prejudiced by said exclusion. State v. Serio, supra; State v. Freeman, supra. Thus, the assignment of error lacks merit.
11fiWe have examined the record for error patent and found none.
CONCLUSION
For the foregoing reasons, the defendant’s convictions and sentences are affirmed.
AFFIRMED.