DREW, J.
|!Yulia Serova was convicted of one count of prostitution, second offense, in violation of La. R.S. 14:82(A)(2) and (B)(2).[1] She was sentenced to one year at hard labor, suspended, and one year of supervised probation, subject to special conditions, a fine of $250, and court costs, in default of which she would serve 30 days in the parish jail. The defendant appeals. We affirm.
FACTS
On September 6, 2007, the Shreveport Police Department conducted a sting operation to determine whether local escort services were actually fronts for illegal prostitution.
Corporal Paul Vines contacted Ace Escorts to get someone to meet him at Sam’s Town Casino, where the department had *725 rented two adjoining rooms. Vines was contacted by the defendant, who asked that he meet her in the lobby.
Vines told the defendant that he worked for a check printing company and was in town on business. She asked Vines to show her his company vehicle. He told her that he had left his keys in the room and requested that she accompany him there. In the room, the defendant thoroughly searched the room. She then asked Vines for identification. He produced a valid Texas I.D. card and credit cards. She asked to see his health insurance card from his employer and when he could produce none, she insisted that they |2go to the parking garage to see his vehicle. All during this time, she was placing calls from the bathroom after each of which she would insist on new proof. Vines told defendant her conduct was making him nervous, that he was having second thoughts and he offered to pay her for her time.
She exposed her breasts to reassure him that she was not law enforcement. She then recited her pricing schedule:
• the agency fee was $150,
• a “hand job” was $100;
• oral sex was $300; and
• straight sex was $500.
Vines had been provided $700 in marked $100 bills. Defendant took $200 for her agency fee. After negotiating a fee of an additional $400 for “regular sex,” defendant directed Vines to the bed. She undressed to her underwear and Vines removed his pants and underwear. Defendant retrieved a condom and Vines asked her to remove her underwear to facilitate the application of the condom. When Ser-ova told him that would cost an additional $100, Vines allowed her to take the last $100 bill from his wallet. She removed her underwear. Vines gave the prearranged signal, but the officers could not enter the room because the defendant had engaged the safety latch. Vines and defendant both raced to the door where Vines was able to disengage the latch to let in the officers. She was then arrested.
Detective Jack Miller was working surveillance in a room across the hall. He testified that the plan had been to conduct and record both video and audio surveillance of the events transpiring inside the room. However, | ^because the rooms were diagonally across the hall from each other, Miller testified that the video signal was very weak and made it hard to discern anything that transpired.[2] The audio requires less signal strength and was clearly audible to Miller. Unfortunately, it did not record because of technical problems.
Miller testified that Vines had made the initial contact with an escort agency listed in the phone book while they were all in the same room. Vines then received a call back from someone who instructed him to meet her in the lobby. Miller went to the surveillance room to wait for Vines to return from the lobby.
Upon his return, Vines was accompanied by a woman who was asking many questions concerning his identity. Miller heard the woman quote the price list.
Miller testified that Vines did not initiate the conversation about money for sex. He heard Vines and the woman agree to the price of $400 for “straight sex.” Once Vines gave the “code word,” Miller and another officer, Lt. Ricky Scroggins, went to the room, gaining entry once Vines released the latch. They placed the nude *726 defendant under arrest and recovered the $700.
Lieutenant Ricky Scroggins testified that he was the vice unit supervisor on the evening in question and was working on the arrest team' with Det. Miller. He monitored the peephole from the surveillance room, Lwhere he was able to see when the defendant first arrived at Vines’ room. Other than briefly seeing Vines or the defendant cross in front of the camera on the video feed, Scroggins did not hear or see anything that transpired in the room. Upon entry, he physically stopped her from accessing her belongings, until he could make sure she had no weapon. The $700 in marked money was recovered.
Lt. Owen McDonnell, a fingerprint expert, testified that the defendant’s fingerprints, taken in open court, were those of the person who pled guilty on October 11, 2006, to one count of prostitution under Docket No. 254,281.
When the state rested, defendant moved for an acquittal based on insufficient evidence. The motion was denied, after which the defense rested. The trial court found the defendant guilty as charged and remanded her into state custody pending sentencing. On June 14, 2010, she was sentenced as noted above.
DISCUSSION

Best Evidence

Defendant alleges that the video would be the best evidence, and that the trial court erred in allowing eyewitness testimony in lieu of the video evidence.
The defendant fails to argue this assignment of error. Because of this omission, it is deemed abandoned and we will not consider it. Rule 2-12.4, Uniform Rules, Courts of Appeal; State v. Dewey, 408 So.2d 1255 (La.1982).
| BSufficiency of the Evidence
Defendant argues that the evidence was insufficient to convict her under La. R.S. 14:82(A)(2) because the evidence did not establish that she ever solicited the officer to engage in sexual intercourse for compensation.
The state argues that the evidence proved that:
• the initial contact between defendant and the officer was initiated by defendant;
• she instructed the officer where to meet her;
• she initiated the sex for money discussion; and
• she quoted a fee schedule for various sexual acts.
The state urges that these facts, along with defendant’s previous conviction for prostitution, were sufficient to support a conviction for prostitution, second offense.
Our law on an appellate review of sufficiency of the evidence is well settled.[3]
*727 IfiA conviction under La. R.S. 14:82(A)(2) requires the state to prove the defendant solicited “another with the intent to engage in indiscriminate sexual intercourse with the latter for compensation.”
Defendant cites two cases in which the courts found the evidence insufficient to support a prostitution conviction due to a lack of proof as to solicitation. In the first, State v. Jackson, 381 So.2d 454 (La.1980), an officer telephoned the defendant and informed her that she had been recommended to him. When she declined due to the lack of a reference, the officer had another officer call pretending to be a customer of a former call girl to whom he was trying to refer business. The defendant subsequently allowed the two officers to come over. After she was satisfied as to their identities, she stated that it would cost them $75 each for a half-hour. Having agreed on the price, one of the officers accompanied her into her bedroom, where in due course she was arrested.
In State v. Russell, 448 So.2d 798 (La.App. 2d Cir.1984), writ denied, 450 So.2d 956 (La.1984), the defendant was one of three women summoned to a Shreveport hotel in a law enforcement sting operation. The police had initially made contact with another person who brought the defendant with her to the hotel. Once there, the defendant was asked by a detective how much the date would cost him, to which the defendant responded $75. Asked what he would receive in exchange, the defendant 17answered “anything goes.” Finding the defendant was not guilty of violating the prostitution statute under the solicitation provision, this Court stated that the defendant “simply arrived at the appointed time, quoted the officer a price and engaged in intercourse.”[4]
The facts of the present case are distinguishable from Jackson, supra, and Russell, supra.
Here, Vines contacted an escort service and spoke to someone other than the defendant. There is no indication that Vines mentioned sex in his initial contact. The defendant then called Vines back and instructed him to meet her in the lobby of his hotel. Once at the hotel, defendant made extensive inquiries regarding Vines’ actual identity until he finally tried to terminate the engagement. At that point, defendant partly disrobed and started to *728 quote her fees for certain acts of sexual intercourse. There is no evidence that prior to this point Vines had ever mentioned or insinuated that the defendant have sex with him in exchange for compensation. Once she quoted her fees, they agreed on a price of $400 for “straight” or “regular” sex. Defendant removed the remainder of her clothing and was attempting to place a condom on Vines when the arrest team officers arrived.
This defendant initiated the discussion about sex for money. Vines may have solicited defendant’s presence at the hotel, but defendant solicited Vines to engage in indiscriminate sexual intercourse for compensation.
|sThe state proved its case. The sentence is reasonable. We find no errors patent.
DECREE
The defendant’s conviction and sentence are AFFIRMED.

. The charging instrument correctly lists sub-paragraph (B)(2) as the statutory provision setting forth the sentencing provisions in effect at the time of this crime. After the instant offense, the statute was amended by La. Acts 2008, No. 138, adding a new subpara-graph B, which defined “sexual intercourse.” Former subparagraph B and its subparts were redesignated'as subparagraph C.

. While no recording of the video portion was offered in court, Miller did not unequivocally state that no video recording existed. Miller stated only that the quality was so poor that he could not remember whether it was recorded or not.

. The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App.2d Cir. 1/9/08), 974 So.2d 181, writ denied, 2008-0499 (La. 11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App.2d Cir. 1/14/09), 1 So.3d 833, writ denied, 2009-0310 (La.11/6/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. *727 Smith, 94-3116 (La. 10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685, writ denied, 2009-0725 (La. 12/11/09), 23 So.3d 913, cert. denied, — U.S. -, 130 S.Ct. 3472, 177 L.Ed.2d 1068 (2010); State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La. 12/14/07), 970 So.2d 529. See also, State v. Bowie, 43,374 (La.App.2d Cir.9/24/08), 997 So.2d 36, writ denied, 2008-2639 (La.5/22/09), 9 So.3d 141, (same deference applies to bench trial).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gullette, 43,032 (La.App.2d Cir.2/13/08), 975 So.2d 753; State v. Burd, 40,480 (La.App.2d Cir. 1/27/06), 921 So.2d 219, writ denied, 2006-1083 (La. 11/9/06), 941 So.2d 35. Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. State v. Robinson, 36,147 (La.App.2d Cir.12/11/02), 833 So.2d 1207; State v. Ponsell, 33,543 (La.App.2d Cir.8/23/00), 766 So.2d 678, writ denied, 2000-2726 (La.10/12/01), 799 So.2d 490.

. The defendant in Russell had been convicted of two counts of prostitution, one for engaging in sexual intercourse for compensation and one for soliciting another to engage in sexual intercourse for compensation. The defendant’s conviction for actually engaging in sexual intercourse with others for compensation was affirmed. Russell, supra.