DREW, J.
|,Terral Dean Johnson was found guilty as charged of sexual battery, La. R.S. 14:43.1, and indecent behavior with juveniles, La. R.S. 14:81. For the sexual battery conviction, he was sentenced to five years at hard labor without benefits. For the indecent behavior conviction, he was sentenced to a concurrent three years at hard labor. We affirm in all respects.
FACTS
On July 17, 2011, Hunter Ballanee (“Hunter”) was celebrating his birthday at *1211 a friend’s home. One of the guests was his girlfriend, S.S.[1] Both were 16 years old.
West Monroe police officer John Allen testified that:
• he was the responding officer to a call of a sex crime in West Monroe;
• there he spoke with S.S., Jonathan Johnson, Callie Brasseal, and Hunter;
• he collected no physical evidence;
• S.S., quite nervous and upset, advised that as she slept, someone began touching her and pulling down her pants;
• she initially thought the person was Hunter;
• she asked the person to stop and told him she was on her period;
• the person put his fingers inside her vagina;
• she thought the person also tried to put his penis inside her as well;
• when the lights came on, she saw that the person was not her boyfriend;
• she became upset, running outside the bedroom and out of the trailer; and
12* Hunter gave him a statement,[2] at which point he contacted his sergeant, who took over the investigation.
Sergeant Jennifer Smith of the West Monroe Police Department testified she was contacted by Officer Allen to investigate the case, and that:
• when she arrived, Officer Allen provided her with the basic information;
• she transported S.S. home to notify her parents;
• they all then went to the police department, where S.S. gave a statement;[3]
• she got an arrest warrant for the defendant, who was 48 when this happened;
• S.S. refused medical treatment, as did her parents on her behalf;
• she took no statement from Hunter, with whom she spoke only briefly at the scene and has had no additional contact since the crimes;
• no witness ever provided her with anything favorable concerning the defendant; and
• she never received any information from Josh Johnson or Jarrel Johnson.[4]
S.S. testified that:
• she was watching movies and playing games with her friends;
• she left the group and went by herself to a bedroom and went to sleep;
• she was awakened by someone touching her around her vaginal region;
Is* she told the person, whom she thought
was Hunter, to stop;
• she told the person that she was menstruating;
• she asked the person to stop three times;
• when the lights came on, she realized it was not Hunter;
• as she ran outside, she could hear the voices of Hunter and the defendant;
• she saw the defendant walking to his truck and he spoke to her;[5]
• she took a bath and asked Callie Bras-seal to help her remove a tampon, which *1212 had been pushed in too far by the defendant’s actions;
• in court she identified the defendant as her attacker;
• she never told Josh or Jarrel Johnson that the evénts did not happen;
• she had not really discussed the incident with anyone since it occurred; and
• she never told Jarrel Johnson that she was upset because Hunter was angry. Callie Brasseal testified that:
• she was Jonathan Johnson’s girlfriend and was at Hunter’s birthday party;
• she was watching movies in the master bedroom at the time S.S. left to go to bed in another bedroom;
• subsequently, the defendant left the room;
• about 10 minutes later, Hunter left the room as well;
• she heard Hunter say “[w]hat the f* *k ?”;
• everyone got up to see what was happening;
• she chased S.S., who had run to the opposite end of the trailer park;
• S.S. was on her hands and knees crying, screaming and hyperventilating;
14* S.S. did not want to be touched, but she helped- her up, walked her back to the trailer, and helped her get ready for a bath;[6]
• she heard the defendant make a coarse statement;[7] and
• she gave no statement that night.
Hunter Ballance testified that:
• he was celebrating his birthday at Jonathan Johnson’s house;
• S.S. went to bed away from the rest of the group;
• he stayed with S.S. until she fell asleep, then he returned to the group;
• the defendant left the group, saying he was leaving;
• a few minutes later, he returned to the bedroom;
• he heard S.S. saying, “Hunter, stop-you know I have a tampon in;”
• he heard the defendant say, “[i]t’s not Hunter. It’s TJ”;
• when he turned on the light he saw S.S. crying, with her pants and panties down around her ankles and her vagina exposed;
• S.S. ran from the room, looking horrified, shocked, confused, and disgusted;
• the defendant’s pants were also down, but he still had his boxers on;
• the defendant clearly told him that he was trying to get some “p* * *y”;
• the defendant said, “Nobody got raped. Did they?”;
• he and S.S. went back inside the trailer and S.S. went to take a bath;
• he had to assist S.S.. in removing a tampon;
• he identified the defendant as the one who was in the bedroom with S.S.; •
he made no statements to Josh Johnson or Jarrel Johnson as to whether or not the incident did in fact occur as S.S. reported; and
• he clearly heard the defendant say he was just trying to get some “p* * *y.”
Joshua Johnson testified that:
• he was the defendant’s nephew and was best friends with S.S. and Hunter;
• he had been at boot camp when the incident occurred, but when he was on leave, he talked to Hunter about what happened;
• Hunter said: “[y]ou know, none of that really happened. Right?”;
*1213 • S.S. was present and shook her head in agreement with Hunter’s statement;
• he did not know what to do with the information so he told his father; and
• he did not report the information to the police because he was at boot camp. Jarrel Johnson testified that:
• he is the defendant’s twin brother;
• he was at home asleep when Hunter and Jonathan arrived about 5:00 a.m.;
• Hunter told him that the defendant almost raped S.S.;
• he went over to Jonathan’s trailer to find out what was going on;
• when he arrived, he first made sure everyone was safe;
• at the trailer, he looked around to make sure everything was safe;
• he spoke with S.S., who said that his brother did not touch her sexually;
• she said her clothes were not off, and the defendant did not try to get on her;
• S.S. said she was upset because Hunter was yelling at her and angry;
Hunter told him “none of this happened,” and his brother had done nothing;
• he told Hunter to tell someone about that information;
• he relayed these comments to nobody but his brother; and
• he denied lying for his brother.
Hunter was recalled by the state. He admitted telling Joshua that he hoped the situation did not affect their friendship. He testified that Jarrel told him that it would be better if he said the incident did not happen, and denied telling either Joshua or Jarrel that it did not happen. Hunter also testified that he and Joshua Johnson remained friends and they would still hang out together.
The state recalled S.S., who denied telling Joshua or Jarrel that nothing happened. She recalled being around Joshua and Hunter as they discussed the incident, but she did not hear Hunter say that the incident didn’t happen. She denied downplaying the event to Jarrel that evening. She surmised that the Johnsons may have testified as they did because of kinship to the defendant.
DISCUSSION

Sufficiency

The defendant argues that the state’s evidence is insufficient because of the inconsistencies of the testimony. The state disagrees, as do we.
Our law on appellate review of sufficiency of the evidence is well settled.[8]
*1214 |7The relevant portions of each of these criminal statutes are noted below.[9]
| ^Sexual battery
Under these facts, a conviction for sexual battery required proof that, without consent, he intentionally touched the victim’s anus or genitals with any part of his body. State v. Redfearn, 44,709 (La. App.2d Cir.9/28/09), 22 So.3d 1078, writ denied, 2009-2206 (La.4/9/10), 31 So.3d 381.
S.S. testified that she gave no one permission to touch her. Even though she asked the defendant to stop more than once, he inserted his fingers into her vagina. The evidence, viewed in a light most favorable to the state, clearly proves the defendant’s guilt of this crime.

Indecent behavior with juveniles

S.S. was 16 years old when this happened; the defendant was 48, a difference of over two decades. She testified that the defendant pulled her panties down and touched her vagina without her permission. This is lewd and lascivious conduct. Immediately after the incident, the defendant, in his own words, stated exactly *1215 what sexual gratification he sought. The evidence, viewed in a light most favorable to the state, clearly proves the defendant’s guilt of this crime.
DECREE
The defendant’s convictions and sentences are AFFIRMED.

. In accordance with La. R.S. 46:1844(W), the victim shall be referred to by initials only.

. Hunter told Officer Allen that the defendant said "it's not what it looked like": that the group had been watching movies when the defendant left the room, saying he would be back in a minute; that later Hunter heard noises so he decided to go check on S.S.; and that when he turned on the light, he saw the defendant and S.S. in bed, with their pants down and genitals exposed.

. S.S.’s statement to Sgt. Smith was essentially the same as her earlier statement to Officer Allen, adding only that she did not give defendant consent to perform the acts.

. Josh is the defendant's nephew; Jarrel is his twin brother.

. "[Njobody got hurt or raped. Did they?”

. She assisted S.S. in removing the tampon.

. “She came on to me and nothing happened."

. The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert, denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App.2d Cir. 1/9/08), 974 So.2d 181, writ denied, 2008-0499 (La. 11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App.2d Cir. 1/14/09), 1 So.3d 833, writ denied, 2009-0310 (La. 11/6/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La. 10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685, writ denied, 2009-0725 (La. 12/11/09), 23 So.3d 913; State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La. 12/14/07), 970 So.2d 529. Where there is conflicting testimony about factual matters, the resolution of *1214 which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Speed, 43,786 (La.App.2d Cir. 1/14/09), 2 So.3d 582, writ denied, 2009-0372 (La.l 1/6/09), 21 So.3d 299; State v. Allen, 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert, denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gullette, 43,032 (La. App.2d Cir.2/13/08), 975 So.2d 753; State v. Burd, 40,480 (La.App.2d Cir. 1/27/06), 921 So.2d 219, writ denied, 2006-1083 (La. 11/9/06), 941 So.2d 35.
The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey, 1999-0023 (La. 1/26/00), 775 So.2d 1022, cert, denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000); State v. Robinson, 36,147 (La.App.2d Cir. 12/11/02), 833 So.2d 1207; State v. Ponsell, 33,543 (La.App.2d Cir.8/23/00), 766 So.2d 678, writ denied, 2000-2726 (La. 10/12/01), 799 So.2d 490. Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. State v. Robinson, supra; State v. Ponsell, supra.
An appellate court reviewing the sufficiency of the evidence must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Jacobs, 504 So.2d 817 (La. 1987); State v. Adkins, 39,724 (La.App.2d Cir.6/29/05), 907 So.2d 232, writ denied, 2006-2514 (La.5/4/07), 956 So.2d 607.

. La. R.S. 14:43.1, as it applies to this case, reads:
Sexual battery is the intentional engaging in any of the following acts with another person where the offender acts without the consent of the victim,
[[Image here]]
(1) The touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender[J
La. R.S. 14:81, as it applies to this case, reads:
Indecent behavior with juveniles is the commission of any of the following acts with the intention of arousing or gratifying the sexual desires of either person:
(1) Any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons. Lack of knowledge of the child’s age shall not be a defense[.]