WILLIAMS, C.J.
The defendant, James Williams, was charged by bill of information with two counts of distribution of a Schedule II controlled dangerous substance (cocaine), in violation of La. R.S. 40:967(A). Following a bench trial, the defendant was found guilty as charged. He was sentenced to 10 years at hard labor for each conviction, to be served concurrently. For the following *1244 reasons, we affirm the defendant's convictions and sentences. However, we remand this matter to the trial court with instructions to amend the court minutes to correctly reflect that, pursuant to La. R.S. 40:967(B)(4)(b), the first two years of the defendant's sentences are to be served without the benefit of parole, probation or suspension of sentence.
FACTS
On April 21, 2016, deputies from the DeSoto Parish Sheriff's Office met with a confidential informant ("CI") to conduct controlled buys of crack cocaine from the defendant, James Williams. The CI was wired with an audio/video recording device and was given money to purchase the drugs. On two occasions - April 21, 2016, and May 3, 2016 - the CI met with the defendant at arranged locations where the drug transactions were completed.[1] The body camera worn by the CI recorded the transactions.
The defendant was arrested and charged by bill of information with two counts of distribution of a Schedule II controlled dangerous substance ("CDS") (cocaine), in violation of La. R.S. 40:967(A). Subsequently, the defendant waived his right to a jury trial.
A bench trial was conducted on March 20, 2018, during which Sergeant Chato Atkins and Sergeant Justin Taylor of the DeSoto Parish Sheriff's Office testified with regard to their investigation. According to the witnesses, the target of the operation was "Bo Hogan," who was later identified as the defendant.
The two law enforcement officers testified that on both April 21, 2016, and May 3, 2016, they met with a CI for controlled narcotics buys in Mansfield, Louisiana.[2] The officers had determined that the CI was reliable because he had completed undercover drug buys for them in six to eight previous cases. On both dates, the CI made contact with the defendant by telephone, met the defendant at an arranged location, purchased drugs from the defendant, returned to the officers, and gave them the drugs purchased. Both transactions were recorded.[3]
Sgt. Atkins testified that the CI was previously arrested after being found in possession of a crack pipe, but he was not prosecuted for that charge in exchange for his help with the controlled drug buys. Sgt. Atkins admitted that the CI was a drug user and a "criminal," and he could have been buying and using drugs while making the controlled buys for them.
Regarding the first transaction, on April 21, 2016, the video depicted the following: the CI was outfitted with the camera; the officer stated that the CI was given $ 70 and had been searched; the CI began walking and called the defendant to tell him that he was on his way to meet him; a vehicle stopped in the road, with the defendant in the passenger seat; after a brief conversation, the defendant handed the CI cocaine, and the CI handed the defendant $ 50; the CI asked for $ 20 more in cocaine; the defendant stated that he did not have more with him, but the CI could call him later; the vehicle in which the defendant was riding drove away; and the CI
*1245 walked back to the officers and gave them the cocaine he had purchased.
As to the second transaction, on May 3, 2016, the video depicted the following: the CI was outfitted with the camera; the police officer stated that the CI was given $ 100 and that he had been searched; the CI began walking and called the defendant to tell him that he was on his way to meet him; the CI walked up to a trailer; the defendant was standing outside with another man, near a vehicle; the CI talked to the defendant, who said he only had "$ 60 worth"; the CI handed the defendant $ 60; after some unintelligible conversation, the defendant appeared to point to the vehicle parked nearby; the CI walked to the car and picked up the cocaine; and the CI walked back to the officers and gave them the cocaine he had purchased.
Sgt. Taylor testified that on both dates, he searched the CI before he went to meet the defendant, and the CI did not have any contraband on his person. Sgt. Taylor identified the baggies of cocaine that the CI purchased from the defendant.[4] Sgt. Taylor admitted that for both transactions, a third person was present with the defendant, and that the video that was recorded on May 3, 2016, did not actually show the cocaine being placed on the hood of the car. He stated that the CI told him that the defendant put the cocaine on the car as he (the CI) was walking up to the trailer.
Bruce Stentz, of the Northwest Louisiana Crime Lab, testified that he analyzed the substance and confirmed that it was cocaine.
The CI testified that he made a deal with the police officers to do undercover drug buys after he was arrested for being in possession of a crack pipe. He testified as to the circumstances of the transactions, and he identified the defendant as the person who sold him cocaine on April 21, 2016, and May 3, 2016. The CI testified that he wore a body camera, and the police officers gave him money to buy the drugs. He stated that he called the defendant to arrange the buys. As to the first transaction, the CI testified that as he was walking, the defendant arrived in a vehicle, and he purchased the drugs from the defendant. With regard to the second transaction, the CI testified that he walked to a house to meet the defendant, gave the defendant the money, and the defendant told him to pick up the drugs that had been placed on the car; he followed the defendant's instructions. The CI also stated that he never bought drugs from the man who was with the defendant. During his testimony, the CI was unable to recall the amount of cocaine he purchased from the defendant, but stated it was anywhere from $ 50 to $ 100. The CI also identified the baggies of cocaine he purchased from the defendant.
With regard to his criminal history, the CI admitted that he was currently incarcerated at Caddo Correctional Center, awaiting trial for illegal possession of stolen things and second degree murder. He also admitted that he had more than five prior simple burglary convictions, "theft arrests," "unauthorized use of a vehicle," and a "drug possession charge." The CI testified that although he had a history of cocaine use, he was not using drugs during the time he was working with the DeSoto Parish Sheriff's Office.
The trial court found the defendant guilty as charged. After denying the defendant's motion for a new trial, the trial court sentenced the defendant to serve 10 *1246 years in prison at hard labor for each conviction, to be served concurrently.
The defendant appeals.
DISCUSSION
The defendant contends the evidence was insufficient to support his convictions for distribution of a Schedule II CDS. He argues that the CI was the "only source of information" to prove the drugs the CI provided to the officers were sold by defendant. Further, the defendant asserts that the camera did not actually capture the transfer of drugs from him to the CI, and the CI could have hidden the cocaine on his person in order to make it appear that the drugs he provided to the officers were sold to him by the defendant.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ; State v. Tate , 2001-1658 (La. 5/20/03), 851 So.2d 921, cert. denied , 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004) ; State v. Carter , 42,894 (La. App. 2 Cir. 1/9/08), 974 So.2d 181, writ denied , 2008-0499 (La. 11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford , 2005-0477 (La. 2/22/06), 922 So.2d 517 ; State v. Dotie , 43,819 (La. App. 2 Cir. 1/14/09), 1 So.3d 833, writ denied , 09-0310 (La. 11/6/09), 21 So.3d 297.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton , 436 So.2d 471 (La. 1983) ; State v. Robinson , 50,643 (La. App. 2 Cir. 6/22/16), 197 So.3d 717, writ denied , 2016-1479 (La. 5/19/17), 221 So.3d 78.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith , 94-3116 (La. 10/16/95), 661 So.2d 442. A reviewing court accords great deference to the trier of fact's decision to accept or reject the testimony of a witness in whole or in part. State v. Casaday , 49,679 (La. App. 2 Cir. 2/27/15), 162 So.3d 578, writ denied , 2015-0607 (La. 2/5/16), 186 So.3d 1162.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Crossley , 48,149 (La. App. 2 Cir. 6/26/13), 117 So.3d 585, writ denied , 2013-1798 (La. 2/14/14), 132 So.3d 410 ; State v. Speed , 43,786 (La. App. 2 Cir. 1/14/09), 2 So.3d 582, writ denied , 2009-0372 (La. 11/6/09), 21 So.3d 299. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Johnson , 47,913 (La. App. 2 Cir. 4/10/13), 113 So.3d 1209.
At the time the instant offenses were committed, La. R.S 40:967(A) provided, in pertinent part:
*1247 [I]t shall be unlawful for any person knowingly or intentionally:
(1) To produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance or controlled substance analogue classified in Schedule II.
***
Cocaine is classified as a Schedule II CDS. La. R.S. 40:964, Schedule II(A)(4).
To present sufficient evidence of distribution of a CDS, the state must prove the following elements: (1) delivery or physical transfer of the CDS to its intended recipient; (2) guilty knowledge of the CDS at the time of the transfer; and (3) the exact identity of the CDS. State v. Sullivan , 51,180 (La. App. 2 Cir. 2/15/17), 216 So.3d 175, writ not cons. , 2017-0895 (La. 9/6/17), 226 So.3d 428.
The testimony of a paid confidential informant goes to the weight of the evidence, not its sufficiency. State v. Sullivan , supra ; State v. Nelson , 46,915 (La. App. 2 Cir. 2/29/12), 86 So.3d 747.
In the instant case, we have reviewed the record in its entirety. The CI testified that he purchased cocaine from the defendant on April 21, 2016, and May 3, 2016. The CI's testimony was corroborated by the testimony of the police officers and video recordings of the transactions. On both occasions, the CI contacted the defendant by phone, walked to the arranged location to meet the defendant, and gave the defendant money in exchange for cocaine. After the transactions, the CI immediately returned to the police officers and turned over the cocaine he had purchased from the defendant.
The video recordings do not clearly depict the defendant passing the cocaine to the CI. However, the defendant was seen and heard on the recordings, and the CI positively identified the defendant as the person who sold him the cocaine. See State v. Sullivan , supra ; State v. Washington , 46,913 (La. App. 2 Cir. 2/1/12), 86 So.3d 697, writ denied , 2012-1407 (La. 11/21/12), 102 So.3d 54 (finding that there was sufficient evidence of a transfer where the CI left his money on a shelf and picked up cocaine as instructed by the defendant); State v. Robinson , 44,676 (La. App. 2 Cir. 9/23/09), 22 So.3d 1064 (finding that there was sufficient evidence of a drug transaction, even if one could not actually see the defendant passing the drug to the CI on the video recording).
Further, with regard to the defendant's argument that the CI could have hidden the cocaine on his person to make it appear as if the defendant had sold him drugs, the police officers testified that the CI was searched prior to going to meet the defendant; the search of the CI's person did not reveal that he was in possession of drugs at that time. Additionally, the video recordings showed that the CI never deviated from his route, removed any article of clothing, or did any act to suggest that he obtained the cocaine from a source other than the defendant.
Furthermore, in finding the defendant guilty of both counts of distribution of cocaine, the trial court stated that it had reviewed the video recordings several times and that it found the CI's testimony to be compelling and truthful. The trial court's credibility determinations are entitled to great deference, and this Court will not reassess the credibility of the witnesses or reweigh the evidence.
Considering the evidence in a light most favorable to the prosecution, we find that the evidence was sufficient for the trial court to conclude beyond a reasonable doubt that the defendant was guilty of both counts of distribution of cocaine. This assignment of error is without merit.
*1248 The defendant also contends the maximum sentences imposed in this case, 10 years at hard labor, even imposed concurrently, are harsh and constitutionally excessive. The defendant argues that maximum sentences are to be reserved for the worst offenses and the worst offenders, and asserts that he is far from the worst of offenders. According to the defendant, he has demonstrated his willingness and ability to change and rehabilitate himself, and his motion to reconsider sentence should have been granted.
An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith , 433 So.2d 688 (La. 1983) ; State v. DeBerry , 50,501 (La. App. 2 Cir. 4/13/16), 194 So.3d 657, writ denied , 2016-0959 (La. 5/1/17), 219 So.3d 332.
The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos , 419 So.2d 475 (La. 1982) ; State v. DeBerry , supra . The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. State v. Jones , 398 So.2d 1049 (La. 1981) ; State v. DeBerry , supra . There is no requirement that specific matters be given any particular weight at sentencing. State v. DeBerry , supra ; State v. Shumaker , 41,547 (La. App. 2 Cir. 12/13/06), 945 So.2d 277, writ denied , 2007-0144 (La. 9/28/07), 964 So.2d 351.
Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey , 623 So.2d 1276 (La. 1993) ; State v. Bonanno , 384 So.2d 355 (La. 1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver , 2001-0467 (La. 1/15/02), 805 So.2d 166 ; State v. DeBerry , supra .
The trial court has wide discretion in the imposition of sentences within the statutory limits and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. State v. Williams , 2003-3514 (La. 12/13/04), 893 So.2d 7 ; State v. Allen , 49,642 (La. App. 2 Cir. 2/26/15), 162 So.3d 519, writ denied , 2015-0608 (La. 1/25/16), 184 So.3d 1289. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. State v. Allen , supra . On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. State v. Jackson , 48,534 (La. App. 2 Cir. 1/15/14), 130 So.3d 993.
As a general rule, maximum or near-maximum sentences are reserved for the worst offenders and the worst offenses. State v. Cozzetto , 2007-2031 (La. 2/15/08), 974 So.2d 665 ; State v. Hogan , 47,993 (La. App. 2 Cir. 4/10/13), 113 So.3d 1195, writ *1249 denied , 13-0977 (La. 11/8/13), 125 So.3d 445.
In 2016, when the instant offenses were committed, La. R.S. 40:967(B)(4)(b) provided that a person convicted of distribution of cocaine shall be sentenced to not less than two, nor more than 30 years at hard labor, with the first two years to be served without the benefit of parole, probation, or suspension of sentence. The statute further provided that the defendant may be ordered to pay a fine of not more than $ 50,000.
It is well settled that an offender's punishment is determined according to the law in effect at the time he committed the offense. State v. LeBlanc , 2014-0163 (La. 1/9/15), 156 So.3d 1168 ; State v. Parker , 2003-0924 (La. 4/14/04), 871 So.2d 317 ; State v. Nixon , 52,202 (La. App. 2 Cir. 8/15/18), 254 So.3d 1228. See also State v. Thompson , 50,392 (La. App. 2 Cir. 2/24/16), 189 So.3d 1139, writ denied , 2016-0535 (La. 3/31/17), 217 So.3d 358 (noting that an ameliorative change in the penalty provision of a statute which occurs after the commission of the offense is only a factor to be weighed by the trial judge in imposing sentence).[5]
In the instant case, at the sentencing hearing, the trial court noted that it had considered all of the evidence presented at trial, the PSI report, and the sentencing factors set forth in La. C. Cr. P. art. 894.1. The court noted that the defendant was 33 years old at the time of the offense, is not married, and has no children. The record also reveals that the defendant was raised by his grandmother, dropped out of high school in the ninth grade, has no vocational skills, and denied a history of substance abuse. Defense counsel informed the trial court that the defendant had become a trustee at the jail and was working every day. He argued that this fact demonstrated the defendant's potential for rehabilitation.
The trial court also reviewed the defendant's criminal history, noting that he has two prior felony convictions. In 2003, the defendant pled guilty to attempted manslaughter (reduced from attempted first degree murder) and was sentenced to 10 years at hard labor. In 2014, the defendant pled guilty to possession with intent to distribute cocaine, and was sentenced to 10 years at hard labor, 8 suspended, with 4 years of probation. The trial court noted that the instant offense occurred while the defendant was on probation for that offense.
At the hearing on the motion to reconsider sentence, the defendant stated that he had "learned his lesson" and that he realized that he needed to make changes in his life and "do better for himself." He also stated that since his arrest, he had been working every day, doing mechanic work and washing cars, and that he "loved the feeling" of going to work every morning. Additionally, Donna Richardson, the defendant's probation officer, stated that she had been supervising the defendant on probation since 2013. According *1250 to Richardson, the defendant "did well" on probation, considering his behavior, and she believed he had the ability to be rehabilitated.
The trial court did not specifically articulate which factors under La. C. Cr. P. art. 894.1, it considered in imposing the defendant's sentences. However, the entire record, including the reasons stated by the trial court, and the PSI report, provide an adequate factual basis for the sentences imposed. The record shows that the trial court adequately considered the facts of this case, including the amount of cocaine the defendant sold to the CI, the defendant's personal and criminal history, and the defendant's efforts at rehabilitation. The record reveals that the defendant has been consistently involved in criminal activity since 2003, including prior drug offenses and a crime of violence, and that he has not benefited from prior probationary treatment.
Further, at the sentencing hearing, the trial court incorrectly stated that the sentencing range for distribution of cocaine was one to 10 years, with or without hard labor.[6] Because the instant offenses were committed in 2016, the applicable sentencing range for the defendant is two to 30 years at hard labor. Consequently, contrary to his argument on appeal, the defendant did not receive the maximum sentences for his crimes of conviction.
Accordingly, we find that the trial court did not abuse its discretion and the sentences imposed do not shock the sense of justice. The sentences are not constitutionally excessive. This assignment of error is without merit.
ERROR PATENT
In accordance with La. C. Cr. P. art. 920, all appeals are reviewed for errors patent on the face of the record. Our review of this record has revealed one error: the trial court imposed an illegally lenient sentence by failing to specify that the first two years of the defendant's sentences are to be served without the benefit of parole, probation, or suspension of sentence, as required by La. R.S. 40:967(B)(4)(b).[7]
When the trial court fails to order that a portion of a sentence be served without benefits as statutorily mandated, the sentence will be automatically served without benefits for the requisite time period. State v. Nixon , supra ; State v. Jones , 48,505 (La. App. 2 Cir. 11/20/13), 128 So.3d 622 ; La. R.S. 15:301.1(A). Accordingly, there is no need to remand this matter for resentencing. However, we hereby remand this matter to the trial court with instructions to amend the minutes and the uniform commitment order to reflect that the first two years of the defendant's sentences are to be served without the benefit of parole, probation, or suspension of sentence, as required by La. R.S. 40:967(B)(4)(b).
CONCLUSION
The defendant's convictions and sentences are affirmed. The trial court is hereby instructed to amend the court minutes to correctly reflect that the first two years of the defendant's sentences are imposed without the benefit of parole, probation or suspension of sentence.
AFFIRMED; REMANDED WITH INSTRUCTIONS.

The baggies containing the substances the CI purchased from the defendant were sent to the Northwest Louisiana Crime Lab for analysis. It was later determined that the substances contained cocaine.

Sgt. Atkins testified that he was only present for the drug buy that took place on April 21, 2016.

The video recordings were admitted into evidence and were played during the defendant's trial.

At trial, there was no testimony as to the weight of the cocaine that the defendant sold to the CI. However, the evidence transfer sheet shows that the CI had purchased "one baggy containing six grams of suspected crack cocaine" and "one baggy containing several bags of suspected crack cocaine."

In 2017, the legislature amended La. R.S. 40:967, to reduce and tailor sentences according to the weight of the CDS involved. See Acts 2017, No. 281. La. R.S. 40:967(B)(1)(a) now provides that for an aggregate weight of less than 28 grams, the offender shall be imprisoned for one to 10 years, with or without hard labor.
The 2017 amendments to La. R.S. 40:967 became effective August 1, 2017, and do not apply retroactively. State v. Ferguson , 2018-0679 (La. App. 1 Cir. 8/20/18), 2018 WL 3993872. See also State v. Nixon , supra (finding that the 2017 amendments to La. R.S. 40:966 and 40:967 did not apply to offenses committed in 2012); State v. Casaday , 51,947 (La. App. 2 Cir. 4/11/18), 247 So.3d 1057, writ denied , 2018-0700 (La. 11/5/18), 255 So.3d 1047.

That sentencing range is provided for in the 2017 amendments to La. R.S. 40:967.

Under the 2017 amendments, which are not applicable as discussed above, there is no restriction of benefits.