Judgment rendered August 14, 2019.
Application for rehearing may be filed
within the delay allowed by Art. 992,
La. C. Cr. P.

No. 52,814-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

ANTONIO LOYD                                Appellant

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Morehouse, Louisiana
Trial Court No. 2017-173F

Honorable Marcus Hunter, Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Edward K. Bauman

ROBERT S. TEW                          Counsel for Appellee
District Attorney

JOHN GATES SPIRES
Assistant District Attorney

* * * * *

Before MOORE, GARRETT, and STONE, JJ.

**MOORE, J.**

After a second jury trial, the defendant, Antonio Loyd, was convicted of first degree robbery in violation of La. R.S. 14:64.1. The trial court sentenced Loyd to 25 years hard labor without benefit of probation, parole, or suspension of sentence. For the following reasons, we affirm the conviction and sentence.

**Facts**

Whitney Yates was working as a teller at Ouachita Independent Bank ("OIB") in Bastrop, Louisiana on December 14, 2016, when the defendant entered the bank and approached her station. He handed Ms. Yates a note which said his child had cancer, he needed money, and this was a robbery. Yates testified that, after reading the note, she looked up at him, and "he let me know that he had a gun, and he would shoot me if I did not get him the money." Although she did not actually see a gun, Ms. Yates testified that the defendant indicated he had a gun by reaching into his left pocket. He told her not to press the panic button and demanded large bills. He took the money and left the bank.

A surveillance video captured the robbery. This video, lasting 1 minute and 13 seconds, was played for the jury. Ms. Yates had a clear view of the defendant's face: He did not wear a mask and only the width of a desk separated the defendant from Ms. Yates. Ms. Yates identified the defendant in open court as the person in the video who robbed her.

Shortly after the robbery, Captain Leondrio Reed of the Bastrop Police Department interviewed Ms. Yates. He prepared a photographic lineup, (State's Ex. S-1), but Ms. Yates was too shaken over the incident to

attempt an identification. A week or so later, Captain Reed again met with Ms. Yates and asked her to review the same photo lineup. (State's Ex. S-2). Yates did not identify anyone in the lineup as the robber.

In February, 2017, Captain Reed received a crime stoppers tip from April Trahan of Sulphur, Louisiana. April told Reed that she was the sister of Ashley Blakeman, who was Antonio Loyd's girlfriend. Reed traveled to Calcasieu Parish and interviewed Ms. Blakeman. Based upon Blakeman's statement to him, Captain Reed prepared a third photo lineup—this time including a photo of Antonio Loyd (State's Ex. S-5). He met with Ms. Yates, and she positively identified the appellant as the robber.

Based on information Captain Reed obtained from Ms. Blakeman, Bastrop Police Department Assistant Chief Anthony Evans went to the Super 8 Motel in Monroe and obtained a motel receipt in the name of Antonio Loyd for the night of December 13, 2016. (State's Ex. S-3). Captain Reed went to the Family Dollar store where he was able to obtain surveillance video footage showing Loyd purchasing a pair of pants on the afternoon of the robbery. (State's Ex. S-7).

Captain Reed testified, without objection, that he confirmed that a person named Antonio Loyd checked into the Westlake Isle of Capri, Lake Charles, Louisiana, on the night of December 14, 2016, and stayed two nights. This was after the robbery occurred earlier in the day on December 14, 2016.

Ashley Blakeman, Loyd's former girlfriend, testified and identified Loyd as the person with whom she traveled to Bastrop in December, 2016. She said that she and Loyd spent the night at the Super 8 Motel in Monroe on December 13, 2016. She reviewed the Super 8 Motel receipt, (State's Ex.

2

S-3), and confirmed that the signature on the receipt was Loyd's. On December 14, 2016, they drove to Bastrop to visit Loyd's brother. During the day, they left his brother's house and went to Family Dollar store where Loyd bought a pair of sweat pants. He put them on in the car. They rode around a few minutes and then went to a bank. Loyd told her to "lay her seat down." She asked him what was going on and he told her not to worry about it.

Ms. Blakeman reviewed the bank video with the jury. She identified Loyd in the video and said he was wearing the same clothing he had on when he got out of the car and entered the bank. She said Loyd returned to the car and drove away fast to his brother's home in Bastrop where he pulled up on the side of the house all the way towards the back.[1] After a while, she asked Loyd when they were going to leave, and he said a little bit closer to dark. When they left, they returned to Calcasieu Parish by a different route from that which they traveled to Monroe the night before. About halfway there, Loyd told her they were going to the Isle of Capri.[2] After they checked in, they went to the room where Loyd pulled money from his sweater. She said that it was thousands of dollars. He gave her several hundred dollars.

---

[1] She testified that when they first visited his brother earlier that day, he parked the car in front of the house.

[2] An exhibit (S-9) depicting a reservation at the Isle of Capri for that date was offered subject to cross-examination and defense counsel elected to reserve his right to cross-examine after the witness was tendered for cross-examination. On cross examination, defense counsel asked Ms. Blakeman questions regarding the location, route, and what happened after they got to the Casino, all of which she answered; however, she acknowledged that she never saw a receipt or anything signed by anyone. After this inquiry in the presence of the jury, defense counsel objected to the admission of this exhibit for lack of proper foundation and the objection was sustained.

Blakeman reviewed a still frame photo from the bank robbery video and identified Loyd. (State's Ex. 4). She stated she got a photo off the Internet which led her to believe Loyd was involved in the robbery. On cross examination, she was asked how she came to get a photo of Loyd related to robbery. She stated that after they arrived at the Isle of Capri, she put two and two together. She typed in (on the computer) Bastrop and the date and multiple things popped up (about the robbery), including a picture of Loyd. When asked why she just did not ask Loyd about it, she answered "I did ask him, and he told me that it was none of my business, not to worry about it." She actually asked him multiple times and she got the same answer. After obtaining Loyd's photograph from the Internet, Blakeman showed it to her sister, April Trahan. Ms. Trahan later contacted Captain Reed.

On cross-examination, Ms. Blakeman admitted that she was pregnant when the defendant broke off their relationship to go back to his wife. The baby was 10 and ½ months old at the time of trial.

The jury returned a verdict of guilty of first degree robbery. The trial court ordered a presentence investigation and fixed sentencing for July 19, 2018. Loyd was sentenced to serve 25 years at hard labor, without benefit of probation, parole or suspension of sentence, and was advised of his rights pertaining to post-conviction relief.

This appeal followed.

**Discussion**

By his first assignment of error, Loyd claims that under the standard of review established by *Jackson v. Virginia*, 433 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), the evidence adduced by the state at trial was

4

insufficient to support a conviction of first degree robbery. Specifically, Loyd focuses on some variations in the testimony of Whitney Yates, the bank teller who identified Loyd as the robber. Additionally, he attacks the credibility of the testimony from his former girlfriend, Ashley Blakeman. Loyd contends that Blakeman's testimony is highly suspect because he broke off his relationship with her to go back to his wife even though she was pregnant with his child.

Loyd contends that Ms. Yates' identification of him is suspect because she did not identify him as the robber in the first two photo lineups, and it was not until the third photo lineup that she identified him. He notes that she provided no discernable features to police despite the fact that he has a prosthetic leg. Although she told Captain Reed that he had a gun, she actually never saw a gun, but concluded Loyd was armed by the way he had his hands in the sweater he was wearing and because he said he did not want to hurt anyone. Loyd maintains that at trial her testimony varied from what she had earlier told Capt. Reed because she testified that he said he indicated he had a gun and did not want to shoot. Finally, he argues that because Ms. Yates did not pick him out of the photo lineup until several months after the robbery and said at trial that she remembered his nose and his eyes, her identification was incorrect.

Loyd also attacks the credibility of his former girlfriend, Ashley Blakeman, who did not testify in the first trial that ended in a mistrial. Ms. Blakeman was charged with being an accessory after the fact, and was incarcerated at the time of trial. She admitted that they were having difficulties in their relationship before it ended.

5

The standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004); *State v. Carter*, 42,894 (La. App. 2 Cir. 1/9/08), 974 So. 2d 181, *writ denied*, 08-0499 (La. 11/14/08), 996 So. 2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517; *State v. Dotie*, 43,819 (La. App. 2 Cir. 1/14/09), 1 So. 3d 833, *writ denied*, 09-0310 (La. 11/6/09), 21 So. 3d 297.

The *Jackson* standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. *State v. Sutton*, 436 So. 2d 471 (La. 1983); *State v. Robinson*, 50,643 (La. App. 2 Cir. 6/22/16), 197 So. 3d 717, *writ denied*, 16-1479 (La. 5/19/17), 221 So. 3d 78.

Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred

according to reason and common experience. *State v. Mingo*, 51,647 (La. App. 2 Cir. 9/27/17), 244 So. 3d 629, *writ denied*, 17-1894 (La. 6/1/18), 243 So. 3d 1064. If a case rests essentially upon circumstantial evidence, that evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438; *State v. Mingo*, *supra*. The appellate court reviews the evidence in the light most favorable to the prosecution and determines whether an alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. *State v. Calloway*, 07-2306 (La. 1/21/09), 1 So. 3d 417; *State v. Garner*, 45,474 (La. App. 2 Cir. 8/18/10), 47 So. 3d 584, 587, *writ not considered*, 12-0062 (La. 4/20/12), 85 So. 3d 1256.

The appellate court does not assess the credibility of witnesses or reweigh evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442. A reviewing court accords great deference to the jury's decision to accept or reject the testimony of a witness in whole or in part. *State v. Casaday*, 49,679 (La. App. 2 Cir. 2/27/15), 162 So. 3d 578, *writ denied*, 15-0607 (La. 2/5/16), 186 So. 3d 1162.

Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. *State v. Crossley*, 48,149 (La. App. 2 Cir. 6/26/13), 117 So. 3d 585, *writ denied*, 13-1798 (La. 2/14/14), 132 So. 3d 410; *State v. Speed*, 43,786 (La. App. 2 Cir. 1/14/09), 2 So. 3d 582, *writ denied*, 09-0372 (La. 11/6/09), 21 So. 3d 299. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of

fact, is sufficient support for a requisite factual conclusion. *State v. Johnson*, 47,913 (La. App. 2 Cir. 4/10/13), 113 So. 3d 1209.

First Degree Robbery is defined by La. R.S. 14:64.1 as follows:

A. First degree robbery is the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon.

B. Whoever commits the crime of first degree robbery shall be imprisoned at hard labor for not less than three years and for not more than forty years, without benefit of parole, probation or suspension of imposition or execution of sentence.

We conclude that, when reviewing the evidence in a light most favorable to the state, the evidence supports the jury's finding that Loyd committed the crime of first degree robbery. Defendant's arguments attacking Ms. Yates' testimony and identification are without merit. Clearly Ms. Yates' failure to identify Loyd in the first two lineups in S-1 and S-2 was because the defendant was not in the first two photo lineups. Ms. Yates did not look at the first photo lineup because she was understandably distraught over the robbery, and she did not identify the defendant in the same lineup several days later because the defendant's photo was not in the lineup. The defendant's photo was placed in the third photo lineup (S-5), and she readily identified him. Ms. Yates testified that she never saw the gun, but the way the defendant had his hand in his sweater indicated to her he had a gun. She further testified that he told her he had a gun and did not want to shoot anyone. She viewed the bank video surveillance tape with the jury and identified the defendant in open court as the man who was depicted in the bank surveillance video committing the actual robbery.

These facts alone are sufficient to support the conviction.

The jury clearly found that Ms. Blakeman's testimony was credible. Ms. Blakeman identified the defendant in the video surveillance evidence from both the bank and Family Dollar store. She testified that she was with the defendant at the Motel 8 in Monroe, and in Bastrop and outside the bank in the car. She also testified regarding the trip back to Lake Charles where the couple stayed at the Isle of Capri casino/hotel. Her testimony clearly placed the defendant in Bastrop and Monroe during the time of the robbery. Obviously, the jury did not buy into the argument that she fabricated the story because she was bitter because the defendant left her when she was pregnant with his child.

Accordingly, the evidence shows that the state's evidence met its burden of proof pursuant to R.S. 14:64.1, namely, (1) that defendant took something of value belonging to another ($8,850 cash); (2) that the cash taken was in the immediate control of Ms. Yates when it was taken; (3) that the defendant used force or intimidation against the victim, Ms Yates, in order to accomplish the taking (he told her he would shoot her if he did not give her the money); and (4) that defendant led Ms. Yates to reasonably believe that he was armed with a dangerous weapon (he told her he had a gun and reached into his coat pocket). Furthermore, the evidence established, beyond any reasonable doubt, that it was Antonio Loyd who committed the robbery at Ouachita Independent Bank, in Bastrop, Louisiana, on December 14, 2016.

This assignment is without merit.

By his second assignment of error, the defendant alleges that the trial court erred by allowing Captain Reed to testify that the signature on the Waiver of Rights form and Isle of Capri receipt looked the same.

9

The transcript of the relevant testimony reads as follows:

[Direct examination by the State]:

You still have the hotel receipt there. Right?

-Yes.

You can't attest who signed that receipt at the hotel can you?

-No.

But you know who signed your rights waiver?

- Yes.

Do these signatures appear to be the same?

Mr. Brumfield: Objection, Your Honor. He's asking for an expert opinion.

By the Court: Sustained.

State: No, I'm not asking for an expert opinion, Judge. I asked him his opinion do they appear to be the same.

Mr. Brumfield: still asking for an expert opinion.

By the Court: I sustain.

Q: You see any difference in them?

A. No.

Q: Thank you very much.

It is clear from the state's exhibits admitted into evidence and the transcript above that the "hotel receipt" signature that Capt. Reed was asked to compare with was the Motel 8 receipt (Exhibit S-3), and the signature on the "waiver of rights" form. (Exhibit S-10). There was no Isle of Capri receipt proffered as evidence by the state. The state did, however, attempt to place into evidence a reservation (Exhibit S-9) allegedly made by Loyd at the Isle

of Capri, but the court did not admit S-9 into evidence. It is clear that the purpose of the reservation exhibit was to corroborate Ms. Blakeman's testimony that the couple stayed at the Isle of Capri on December 14 and 15.

Accordingly, the defendant also asserts in another assignment of error that it was trial error to allow Capt. Reed to testify that he contacted the Isle of Capri and obtained confirmation by a letter from the hotel that Loyd stayed at the hotel on December 14 and 15, 2016.

The transcript above clearly shows that defense counsel objected to the prosecution's question whether the two signatures looked the same, and the trial court sustained the objection. When the prosecutor asked Capt. Reed if he saw any difference in the two signatures and he answered that he did not, there was no objection.

Counsel on appeal also cites *dicta* from *State v. Juniors,* 03-2425 (La. 6/29/05), 915 So. 2d 291, 329-330, *cert. denied,* 547 U.S. 1115, 126 S. Ct. 1940 (2006) regarding authentication of handwriting:

> As an initial matter, we note that pursuant to La. C.E. art. 901(B)(3), authentication of handwriting may be made by non-expert opinion or by comparison with authenticated specimens by the trier of fact or by an expert witness. *Kid Gloves, Inc. v. First Nat. Bank of Jefferson Parish,* 600 So. 2d 779, 781 (La. App. 5 Cir. 1992). Louisiana courts have long held the law permits the trier of fact to compare for itself known and contested handwriting samples. *Citations omitted*.

Since Captain Reed was not a handwriting expert, counsel maintains he could not compare the authenticated "waiver of rights" signature with the unauthenticated signature on the Motel 8 receipt. The record shows that the trial court sustained the defense objections to Capt. Reed's opinion that the signatures were the same. When asked if he saw any difference in the two signatures, Reed testified that he did not. There was no objection by the

11

defense, presumably because Capt. Reed did not state that the two signatures were the same.

Additionally, the trial transcript clearly shows that the documents in question were published to the jury and jury members were allowed to examine the documents and thus they could decide if the signatures were the same.

This assignment is without merit.

In his last assignment, appellant contends that the trial court erred when it allowed Captain Reed to testify regarding his contact with the Isle of Capri to confirm that Loyd stayed at the hotel on December 14 and 15, 2016. Counsel complains that Capt. Reed received this confirmation by a letter that was not signed under oath nor produced in court.

The testimony in question was elicited from Captain Reed, first, by the state on direct examination, and second, by defense counsel on cross-examination.

The trial transcript shows that the state asked Capt. Reed whether he was able to track Loyd to any locations after the robbery. Without any objection by the defense, Reed answered that he was able to track him to the Isle of Capri in Westlake and that he had someone confirm that an individual named Antonio Loyd did go there on the night of December 14th and he stayed for two nights.

On cross-examination, defense counsel asked Reed if he went to the Isle of Capri himself or sent other detectives. Reed responded that he spoke with security and staff members, and they sent him a letter confirming that he (Loyd) had been there.

The defense never raised an objection to the state's questioning nor Capt. Reed's testimony regarding his efforts to confirm that Loyd spent December 14 and 15 at the hotel. Furthermore, defense counsel's cross-examination elicited Reeds' answers regarding confirmation of Loyd's presence at the casino on the night of December 14.

Because there was no timely objection raised regarding this line of questioning, this assignment is without merit. La. C.E. Art. 103A(1).

## CONCLUSION

For the reasons stated above, we affirm the conviction and sentence of the defendant.

**CONVICTION AND SENTENCE AFFIRMED.**